No. 2--05--0619     Filed:  4-25-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JEREMY SOMERS, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 01--L--458 |
| | ) | |
| MICHAEL J. QUINN, | ) | Honorable |
| | ) | Margaret J. Mullen, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

Plaintiff, Jeremy Somers, appeals the judgment of the circuit court that (1) granted defendant Michael J. Quinn's motion in limine to bar the testimony of plaintiff's expert witness regarding the standard of care applicable to defendant's medical treatment of plaintiff, and (2) denied plaintiff's motion for a continuance to find another expert to testify to the standard of care.  We affirm.

Plaintiff filed his complaint on June 11, 2001, alleging that defendant was negligent in his treatment of plaintiff's broken leg and that his negligence resulted in injury to plaintiff.  On July 5, 2002, pursuant to Supreme Court Rule 213 (210 Ill. 2d Rs. 213(f), (g), (h), (i), (j), (k)), plaintiff disclosed that Dr. Mark Benson would describe at trial the treatment he provided plaintiff in the months following plaintiff's treatment by defendant and would opine that defendant's treatment "was inadequate and below the standard of care."

Dr. Benson sat for a discovery deposition on June 2, 2003. Dr. Benson testified that he acquired medical licenses from Colorado and Wisconsin in 1979. He let his Colorado license expire after one year but retained his Wisconsin license. In 1993, Dr. Benson suffered a cervical spine fracture in an automobile accident. He took hydrocordone for pain relief and became addicted to it. In 1996, the Wisconsin medical licensing board suspended Dr. Benson's medical license after finding that he had taken hydrocordone samples from his office. Dr. Benson testified that he secured periodic stays of the suspension between 1996 and 2002. He further testified that he was twice convicted of attempting to obtain a prescription by fraud, once in May 2000 and again in October 2002. In the spring of 2002, Dr. Benson surrendered his medical license due to vision problems caused by eye ulcerations. Dr. Benson testified that he intended to return to the practice of medicine in August 2003.

In October 2004, the trial court entered an order setting the case for jury trial on May 23, 2005. The order also set April 1, 2005, as the deadline for all motions for involuntary dismissal or summary judgment.

Dr. Benson sat for an evidence deposition on May 20, 2005, three days before trial. He testified that, on August 20, 2003, he petitioned the Wisconsin medical licensing board for reinstatement of his license. On August 29, 2003, the board granted Dr. Benson a limited medical license with the opportunities to apply for consecutive three-month extensions of that limited license. In October 2004, the board found that Dr. Benson had obtained medication by forging prescriptions. Subsequently, Dr. Benson surrendered his license, effective December 15, 2004.

Dr. Benson testified that the board's findings that he had forged prescriptions were false, but acknowledged that he stipulated to those findings in the board's written order accepting the surrender of his license. Dr. Benson admitted that he held no medical license at the time of the deposition.

On May 23, 2005, the day of trial, defendant filed a motion in limine to exclude from evidence the portions of Dr. Benson's evidence deposition in which he testified as to the standard of care applicable to defendant's medical treatment of plaintiff and as to whether defendant's treatment met that standard. Parenthetically we note that defendant did not challenge the admissibility of Dr. Benson's descriptions of his or defendant's treatment of plaintiff. Defendant argued that, because Dr. Benson lacked a medical license at the time of his evidence deposition, his qualifications did not meet the standards for expert medical witnesses set forth in section 8--2501 of the Code of Civil Procedure (the Code) (735 ILCS 5/8--2501 (West 2004)). Defendant attached to his motion a copy of a December 15, 2004, decision of the Wisconsin medical licensing board finding that Dr. Benson "committed unprofessional conduct" by forging prescriptions on two occasions in October 2004. The decision noted that Dr. Benson had voluntarily surrendered his Wisconsin medical license effective immediately.

The record contains no transcript of the hearing on defendant's motion. The trial court issued a written order in which it found that section 8--2501 of the Code categorically required that an expert be licensed to practice medicine at the time he testified to the applicable standard of care in a medical malpractice case. The trial court also held that, even if it had discretion to decide whether to allow Dr. Benson's testimony, it would still exclude the testimony. Accordingly, the trial court granted the motion to bar Dr. Benson's testimony relating to the standard of care applicable to defendant. Plaintiff then moved for a continuance of the trial for the purpose of retaining another

expert. The trial court denied the motion on the ground that plaintiff "was not duly diligent." The parties stipulated that, in the absence of Dr. Benson's testimony, plaintiff would present no evidence on the standard of care. Defendant then moved for a directed verdict, which the trial court granted. Plaintiff filed this timely appeal.

Plaintiff challenges the trial court's decision barring Dr. Benson's testimony on the ground that he lacked a medical license at the time he gave his evidence deposition. The plaintiff in a medical malpractice action must prove: (1) the proper standard of care against which the defendant's conduct is measured; (2) a negligent failure to comply with the applicable standard; and (3) a resulting injury proximately caused by the defendant's want of skill or care. Jinkins v. Evangelical Hospitals Corp., 336 Ill. App. 3d 377, 382 (2002). " 'Unless the physician's negligence is so grossly apparent or the treatment so common as to be within the everyday knowledge of a layperson, expert medical testimony is required to establish the standard of care and the defendant physician's deviation from that standard.' " Sullivan v. Edward Hospital, 209 Ill. 2d 100, 112 (2004), quoting Purtill v. Hess, 111 Ill. 2d 229, 242 (1986).

At the time of this case, section 8--2501 of the Code contained four factors for the trial court to consider in qualifying an expert witness, including whether the witness was licensed in the same profession as the defendant. 735 ILCS 5/8--2501(c) (West 2004). This section provides in relevant part:

"Expert Witness Standards. In any case in which the standard of care applicable to a medical professional is at issue, the court shall apply the following standards to determine if a witness qualifies as an expert witness and can testify on the issue of the appropriate standard of care.

(a) Whether the witness is board certified or board eligible in the same specialties as the defendant and is familiar with the same medical problem or problems or the type of treatment administered in the case;

(b) Whether the witness has devoted 75% of his or her time to the practice of medicine, teaching or University based research in relation to the medical care and type of treatment at issue which gave rise to the medical problem of which the plaintiff complains;

(c) whether the witness is licensed by any state or the District of Columbia in the same profession as the defendant; and

(d) whether, in the case against a nonspecialist, the witness can demonstrate a sufficient familiarity with the standard of care practiced in this State." 735 ILCS 5/8--2501 (West 2004).

As to plaintiff's first contention, our standard of review is <u>de novo</u> because the construction of a statute is a question of law. <u>DeLuna v. Burciaga</u>, 223 Ill. 2d 49, 59 (2006), citing <u>In re Estate of Dierkes</u>, 191 Ill. 2d 326, 330 (2000). Our primary objective is to ascertain and give effect to the intention of the legislature. <u>DeLuna</u>, 223 Ill. 2d at 59, citing <u>Southern Illinoisan v. Illinois Department of Public Health</u>, 218 Ill. 2d 390, 415 (2006). When the language of a statute is clear and unambiguous, a court must give effect to the plain and ordinary meaning of the language without resort to other tools of statutory construction. <u>Raintree Homes, Inc. v. Village of Long Grove</u>, 209 Ill. 2d 248, 255 (2004), citing <u>Michigan Avenue National Bank v. County of Cook</u>, 191 Ill. 2d 493, 504 (2000). " 'One of the fundamental principles of statutory construction is to view all provisions of an enactment as a whole. Words and phrases should not be construed in isolation, but must be

interpreted in light of other relevant provisions of the statute.' " <u>Raintree Homes, Inc.</u>, 209 Ill. 2d at 255-56, quoting <u>Michigan Avenue National Bank</u>, 191 Ill. 2d at 504.

Section 8--2501 of the Code provides standards that the trial court shall apply in medical malpractice cases "to determine if a witness qualifies as an expert witness and can testify on the issue of the appropriate standard of care." 735 ILCS 5/8--2501 (West 2004); see also <u>Thompson v. Gordon</u>, 221 Ill. 2d 414, 433 (2006). The plain language of section 8--2501 does not impose a mandatory licensure requirement. Instead, the statute leaves the admission of the expert's testimony to the determination and discretion of the trial court. The legislature could have imposed a mandatory licensure requirement had it wished to do so, and we will not read such a requirement into the statute. See <u>Northwest Diversified, Inc. v. Desai</u>, 353 Ill. App. 3d 378, 398-99 (2004) (noting that the appellate court may not read into a statute exceptions, limitations, or conditions not expressed by the legislature).

Plaintiff argues that subsections (a) through (d) are not "necessarily mandatory," but instead are "factors *** to be applied by the court in making its determination." We find plaintiff's argument persuasive and determine that the plain language of the statute is controlling. We determine that it is inappropriate to disregard statutory authority governing the admission of expert testimony in medical malpractice cases and to instead decide the case based upon other common-law requirements for the competency of a medical expert. See 735 ILCS 5/1--104 (West 2004) (providing that supreme court may not make rules governing civil practice and procedure that are inconsistent with the provisions of the Code). This court should also not ignore section 8--2501 of the Code simply because our supreme court has not yet had occasion to address its meaning or effect as it would specifically apply to the circumstances presented in this case.

Furthermore, the special concurrence applies <u>Sullivan</u> beyond its facts to determine that <u>Sullivan</u> is controlling and requires that licensure must exist at the time the witness testifies. The special concurrence states:

"The supreme court held in <u>Sullivan</u> that ' "in order to testify as an expert on the standard of care in a given school of medicine, the witness must <u>be</u> licensed therein." ' (Emphasis added.) <u>Sullivan</u>, 209 Ill. 2d at 114, quoting <u>Dolan</u>, 77 Ill. 2d at 285. *** <u>Sullivan</u> can be read but one way: the testimony of a witness cannot be considered competent medical opinion testimony unless the witness holds a medical license at the time of the testimony." Slip op. at 21.

There is nothing in <u>Sullivan</u> or common experience that implies or concludes that expertise exists solely and dependently on the existence of a license and that, upon termination of the license, regardless of cause, the expertise fades to black and is lost until the license is renewed. Such an interpretation does violence to the concept of memory.

Our supreme court explained in <u>Sullivan</u> that licensure in the school of medicine about which the expert proposes to testify is required because:

"[T]here are different systems or schools of medicine with varying tenets and practices, and *** testing the care and skill of a practitioner of one school of medicine by the opinion of a practitioner of another school would result in inequities. The practitioner of a particular school of medicine is entitled to have his or her conduct tested by the standards of that school. <u>Dolan</u>, 77 Ill. 2d at 283 (and authorities cited therein)." <u>Sullivan</u>, 209 Ill. 2d at 113.

Thus, the licensure requirement serves to protect practitioners of one school of medicine from the imposition of standards followed in other schools of medicine. Preventing the testimony of someone

who had never been licensed in the school of medicine at issue or, especially, someone licensed in a different school of medicine clearly would tend to prevent the imposition of an improper standard. We fail to see how allowing the testimony of an expert who had been licensed in the appropriate school of medicine, but who was no longer so licensed, would result in the harm that Sullivan identified.

The issue then becomes what effect the witness's lack of current licensure has on his or her ability to opine on the current state of the standards in a school of medicine. The legislature touched on this issue in the recent amendment to section 8--2501 contained in Public Act 94--677, eff. August 25, 2005. Though this amendment cannot be used to dispose of this case, because it was passed after the trial court's ruling in this case, its terms are instructive in this situation.

Section 8--2501 of the Code now allows for testimony from a retired expert if the expert provides:

"[E]vidence of attendance and completion of continuing education courses for 3 years previous to giving testimony. An expert who has not actively practiced, taught, or been engaged in university-based research, or any combination thereof, during the preceding 5 years may not be qualified as an expert witness." 735 ILCS Ann. 5/8--2501 (West Supp. 2005).

Accordingly, the legislature has now found fit to allow testimony from experts who have retired or have not been in active practice for up to five years.

Here, Dr. Benson had surrendered his license only five months before trial was scheduled. While his lack of a current license was certainly a factor that the trial court should have considered

in determining whether Dr. Benson qualified as an expert, we do not find that his lack of a current license is a basis for an automatic disqualification.

We also believe that the special concurrence fails to examine Sullivan in context. In Sullivan, the expert was never licensed in the area in which he was presented to opine; he was, however, licensed in another area of medicine. Furthermore, we have not discovered another reported case wherein the issue of a prior licensure has been considered. Therefore, neither Sullivan nor any other reported case is controlling or precedential.

> "A judicial precedent attaches a specific legal consequence to a detailed set of facts in an adjudged case or judicial decision, which is then considered as furnishing the rule for the determination of a subsequent case involving identical or similar material facts and arising in the same court or a lower court in the judicial hierarchy." Allegheny General Hospital v. National Labor Relations Board, 608 F.2d 965, 969-70 (3rd Cir. 1979).

Chief Justice Marshall examined the purpose of this principle of law in 1821 when he wrote:

> " 'It "is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question *** before the [c]ourt is investigated with care, and considered in its full extent. Other principles, which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." [Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399-400, 5 L. Ed. 257, 290

(1821).]' R. Aldisert, The Judicial Process 314 [(1996)]." People v. Trimarco, 364 Ill. App. 3d 549, 555 (2006) (McLaren, J., dissenting).

We submit that Sullivan is logical and sound only as it applies to the particular facts in Sullivan. The witness in that case was a licensed physician but never obtained a license in the area of medicine at issue and thus patently was not certified as a knowledgeable expert. Applying Sullivan retrogressively, as the special concurrence has, is counterintuitive. Among other things, licenses expire, are suspended, are revoked, and are even voluntarily surrendered. However, the underlying skills that the license certified do not mystically or automatically disappear when the license is no longer legally valid. The termination of a license to operate a motor vehicle does not cause the driver to lose the mental or physical ability to control and maneuver a vehicle. Rather, the driver loses only the legal ability to operate a motor vehicle. The unlicensed driver can still opine as to the cause of an accident he or she witnesses while a pedestrian, a passenger, or the driver of a vehicle. There is no logical reason to conclude that never having had a license is the same thing as having had a license but not at the time of testifying.

In a recent decision, our supreme court held that a witness's compliance with an engineering licensing requirement was not a prerequisite to admissibility of the witness's expert testimony; instead, it was merely a factor to be weighed in considering whether the witness was qualified as an expert, thereby overruling People v. West, 264 Ill. App. 3d 176 (1994). Thompson, 221 Ill. 2d at 429. The Thompson court further provided that, "[t]o the extent that West may be read as holding that licensing is a prerequisite to the admissibility of expert testimony rather than a factor to be weighed in considering expert qualifications, we overrule that portion of the West decision and reject

defendants' argument that West controls the disposition of this case." Thompson, 221 Ill. 2d at 432-33.

Thus, it would appear here that the supreme court has effectively overruled sub silencio the special concurrence's interpretation of Sullivan. From Thompson, it is clear that whether an expert witness has a license or does not have a license is a factor to be considered, and that the lack of a license does not inevitably lead to the conclusion that the witness has also lost all the knowledge that he or she previously possessed or that any diminution occurred in the amount of knowledge previously possessed. Interestingly, the witness in this case apparently lost his license because of improper acts related to substance addiction and not because of an established deficiency based upon a loss of memory or some other mental disability that sapped his knowledge in the area of his claimed expertise.

Because current licensure is a factor to be considered by the trial court, we believe that the appropriate analysis in this case deals with whether the trial court abused its discretion based upon the totality of the circumstances. As our supreme court has stated:

"With regard to expert testimony, it is well settled that the decision whether to admit expert testimony is within the sound discretion of the trial court. Snelson v. Kamm, 204 Ill. 2d 1, 24 (2003). A person will be allowed to testify as an expert if his experience and qualifications afford him knowledge that is not common to laypersons and where his testimony will aid the trier of fact in reaching its conclusions. People v. Miller, 173 Ill. 2d 167, 186 (1996). 'There is no predetermined formula for how an expert acquires specialized knowledge or experience and the expert can gain such through practical experience, scientific study, education, training or research.' Miller, 173 Ill. 2d at 186. Thus, '[f]ormal academic training or specific degrees are not required to qualify a person as an expert; practical

-11-

experience in a field may serve just as well to qualify him.' Lee v. Chicago Transit Authority, 152 Ill. 2d 432, 459 (1992)." Thompson, 221 Ill. 2d at 428-29.

In the present case, the trial court initially held that it had no discretion to allow the witness to testify. However, the trial court also mentioned that it would not have allowed the witness to testify even if it had the discretion to do so. This court will find an abuse of discretion only when no reasonable person would take the position adopted by the lower court. McKenzie Dredging Co. v. Deneen River Co., 249 Ill. App. 3d 694, 700 (1993). The test is not whether the reviewing court agrees with the trial court's decision, but whether the lower court " ' "acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted." ' " American Federation of State, County & Municipal Employees, Council 31 v. Schwartz, 343 Ill. App. 3d 553, 559 (2003), quoting Zurich Insurance Co. v. Raymark Industries, Inc., 213 Ill. App. 3d 591, 595 (1991), quoting In re Marriage of Aud, 142 Ill. App. 3d 320, 326 (1986). Here, the trial court could have reasonably concluded that Dr. Benson was not qualified to testify as an expert due to the surrender of his medical license and due to the other findings made by the Wisconsin board of medical examiners. Considering the totality of the circumstances, we cannot conclude the trial court abused its discretion.

Plaintiff's next contention is that the trial court erred in refusing to grant him a continuance to retain another expert witness. Litigants do not have an absolute right to a continuance, and the grant or denial of a motion for a continuance lies in the sound discretion of the trial court. Williams v. Covenant Medical Center, 316 Ill. App. 3d 682, 692 (2000). The decisive factor in assessing the

merits of a motion for a continuance is whether the moving party has exercised due diligence in proceeding with the case. Williams, 316 Ill. App. 3d at 692.

Plaintiff claims that he acted with due diligence at all stages of the proceedings and criticizes defendant for not bringing his motion to exclude Dr. Benson's testimony before the day of trial. Plaintiffs asserts that "due diligence can scarcely require the Plaintiff to anticipate as-yet-unregistered objections by the Defendant, or to make such objections in the Defendant's stead." Plaintiff's protests do not ring true. Due diligence required plaintiff to stay abreast of the status of his own witness's medical license, which plaintiff knew or should have known had been in a precarious state for years. Though defendant did learn at Dr. Benson's June 2003 discovery deposition that he was not currently licensed, defendant had no duty to file what at that point would have been a possibly premature motion in limine, especially in light of Dr. Benson's stated intention to seek reinstatement of his license in the next two months. Nor did defendant have a duty to monitor Dr. Benson's credentials in the intervening months to determine whether he had regained his license before his evidence deposition. When the evidence deposition finally transpired on May 20, 2005, plaintiff should have expected that Dr. Benson's lack of a medical license at that time would draw a motion to exclude his testimony. Defendant, we recognize, could have filed that motion on May 20 rather than three days later on May 23, but the diligence at issue here is not defendant's, but plaintiff's. Since the supreme court's 2004 decision in Sullivan, there has been no question that licensure is an absolute requirement of a witness who would testify to the standard of care in a medical malpractice case. Plaintiff's counsel at the time of the motion in limine had been in the case since January 24, 2002. At least since June 2003, counsel was aware that Dr. Benson had suffered physical ailments and committed misdeeds that negatively impacted the viability of his license, leading first to the licensing board's

suspension of that license and, later, in the spring of 2002, to his outright surrender of it. This knowledge obligated plaintiff's counsel to stay current on the status of this witness's license. If counsel did not know well before May 2005 that Dr. Benson had again surrendered his license in December 2004, counsel certainly should have known. Plaintiff has no excuse for failing to secure an expert with adequate credentials before the May 20, 2005, deposition.

Plaintiff argues that defendant waived his objection to Dr. Benson's testimony by failing to raise it at the May 2003 evidence deposition. Plaintiff cites three cases, Lundell v. Citrano, 129 Ill. App. 3d 390 (1984), Banwart v. Okesson, 83 Ill. App. 3d 222 (1980), and Bireline v. Espenscheid, 15 Ill. App. 3d 368 (1973), all of which rely on Supreme Court Rule 211(c)(1) (134 Ill. 2d R. 211(c)(1)). That rule provides:

> "Grounds of objection to the competency of the deponent or admissibility of testimony which might have been corrected if presented during the taking of the deposition are waived by failure to make them at that time; otherwise objections to the competency of the deponent or admissibility of testimony may be made when the testimony is offered in evidence." 134 Ill. 2d R. 211(c)(1).

The crucial phrase here is, "might have been corrected if presented during the taking of the deposition." 134 Ill. 2d R. 211(c)(1). Dr. Benson admitted at the deposition that he was not currently licensed in medicine. As plaintiff was powerless to remedy Dr. Benson's lack of a medical license during the deposition, defendant was not required to raise that lack in an objection to Dr. Benson's opinion.

Lundell, Banwart, and Bireline do not help plaintiff. In Lundell, the plaintiff sued the defendant for lower-back injuries that the plaintiff claimed were caused when the defendant's

automobile struck the plaintiff's. At trial, the defendant sought to exclude from evidence the portions of a chiropractor's deposition testimony in which he opined that the plaintiff's injuries were caused by a certain type of neck strain. The defendant argued that the chiropractor "lacked a history of the plaintiff's lower-back problems" and that, therefore, any opinion he rendered about the cause of those problems was speculative and lacking in foundation. Lundell, 129 Ill. App. 3d at 397. The reviewing court held that the defendant waived the argument because "objections to deposition testimony of an expert witness which assumes facts without evidentiary support must be made at the time the deposition is taken." Lundell, 129 Ill. App. 3d at 398. The reviewing court explained that "[t]he lack of foundation for [the chiropractor's] testimony was evident at the time of the deposition and should have been pointed out to afford the plaintiff a chance to remedy the defect." Lundell, 129 Ill. App. 3d at 398.

In Banwart, the defendant moved to exclude the deposition testimony of a physician who treated the plaintiff following an accident involving scaffolding owned by the defendant. The defendant argued that the physician's opinions were based on facts contained in hospital records and thus were inadmissible as hearsay. Citing Rule 211(c)(1), but providing no discussion, the reviewing court held that the defendant's hearsay objection was waived for his failure to raise it at trial. Banwart, 83 Ill. App. 3d at 227-28.

In Bireline, the defendants objected at trial to leading questions asked by the plaintiff during his witness's evidence deposition. Citing Rule 211, the reviewing court summarily found the defendants' objection waived. Bireline, 15 Ill. App. 3d at 371.

The bases for the objections in Lundell, Banwart, and Bireline differed fundamentally from the grounds for the objection in the present case. Where a deponent's testimony is based on hearsay

or lacks proper foundation, or where the deponent is asked an improper leading question, the impropriety may potentially be remedied on the spot. In Lundell, Banwart, and Bireline, defects such as these were found curable at the depositions. By contrast, Dr. Benson's lack of a medical license could not be remedied during the deposition. See Schultz v. Richie, 148 Ill. App. 3d 903, 908 (1986) (objection to "the competency of the deponent and [the] relevancy of the subject matter of the testimony in whole" was not waived under Rule 211); Peterson v. Henning, 116 Ill. App. 3d 305, 310 (1983) (objection to deponent's expression of an opinion about the veracity of plaintiff's prior statement to her was not waived, because "[t]he defect of [the witness] interjecting her opinion could not have been 'corrected' at the time her deposition was taken").

Next, plaintiff argues that, because Dr. Benson's testimony was the lynchpin of his case, defendant's motion in limine to exclude that testimony was "essentially equivalent" to a motion for involuntary dismissal and, therefore, should have been brought before the April 1, 2005, deadline for motions to dismiss. Plaintiff also complains that the trial court did not give him "an opportunity to file or otherwise prepare a response" to defendant's motion in limine. The record contains no indication that plaintiff asked the trial court to deny the motion in limine as untimely or allow him a response to it. Therefore, plaintiff has not shown us that he properly preserved these arguments for appellate review. See Morgan v. Richardson, 343 Ill. App. 3d 733, 742 (2003) (failure to object at trial and to raise the issue in a posttrial motion results in waiver).

Last, plaintiff argues that, because his complaint stated all the elements of a cause of action for medical malpractice, the dismissal of his case was a "palpable injustice." In support, plaintiff cites cases that set forth the elements of medical malpractice. Our concern, however, is not whether plaintiff's complaint was sufficient, but whether he diligently sought an expert with the proper

credentials. We find that he did not. We conclude, therefore, that the trial court did not abuse its discretion in denying plaintiff's motion for a continuance.

For the reasons stated above, we affirm the judgment of the circuit court of Lake County.

Affirmed.

McLAREN, J., concurs.

JUSTICE O'MALLEY, specially concurring:

The majority states that following our supreme court's decision in <u>Sullivan</u>, as I would do in this case, is "retrogressive" because <u>Sullivan</u> is not "logical and sound" beyond its particular facts. Slip op. at 10. Thus, the majority apparently takes a retrogressive view of judicial hierarchy, wherein the appellate court decides the soundness of a supreme court decision and then decides whether it should be precedential or limited to its particular facts. If the supreme court's decisions are meant to be limited to their facts, then it has squandered considerable time and paper detailing the policy ramifications of rulings that affect only the parties to each case the supreme court reviews, and, if the supreme court's function is one of error correction confined to a particular case rather than policy determination to guide lower courts such as ours, then the supreme court's practice of straining through myriad petitions for leave to appeal to sift out the cases worthy of its review is arbitrarily cruel. Despite what may the wisdom of the majority's belief that licensure alone should not be dispositive in determining whether an expert healthcare witness is qualified, I must admit that I lack the temerity to declare a supreme court decision illogical and unsound and on those grounds decline to follow it. For the reasons I detail below, I believe our supreme court was clear in stating in <u>Sullivan</u> that licensure is a " 'foundational requirement[]' " (<u>Sullivan</u>, 209 Ill. 2d at 114, quoting

Jones v. Young, 154 Ill. 2d 39, 43 (1992)) for the admission of expert healthcare testimony, and I would follow that supreme court precedent in this case.

Plaintiff challenges the trial court's decision barring Dr. Benson's testimony on the ground that he lacked a medical license at the time he gave his evidence deposition.

Our supreme court has developed common-law requirements for the competency of a medical expert. In Dolan v. Galluzzo, 77 Ill. 2d 279, 285 (1979), the supreme court held:

"[I]n order to testify as an expert on the standard of care in a given school of medicine, the witness must be licensed therein. Once the fact of such license has been established, it lies within the sound discretion of the trial court to determine if the witness is qualified to testify as an expert regarding the standard of care. [Citation.]"

The supreme court reaffirmed the common-law licensure requirement in Purtill v. Hess, 111 Ill. 2d 229, 243 (1986) ("It must be established that the expert is a licensed member of the school of medicine about which he proposes to express an opinion"). Recently, in Sullivan, the supreme court dismissed the notion that its decisions since Dolan and Purtill eroded the requirement "that a health professional expert witness must always be a licensed member of the school of medicine about which the expert proposes to testify." Sullivan, 209 Ill. 2d at 114. The plaintiff in Sullivan argued that the supreme court's prior decision in Jones "retreat[ed] from any rigid, formalistic rule" on licensure. Sullivan, 209 Ill. 2d at 114. Surveying its past decisions on the qualifications of expert medical witnesses, the court responded:

"We cannot accept this argument. Jones clearly reaffirms this court's decision in Purtill describing two foundational requirements: that the health-care expert witness must be a licensed member of the school of medicine about which the expert proposes to testify;

and that the expert must be familiar with the methods, procedures, and treatments ordinarily observed by other health-care providers in either the defendant's community or a similar community. *** It is only <u>after</u> determining that both foundational requirements are satisfied that the court proceeds to evaluate whether the allegations of negligence concern matters within the expert's knowledge and observation." (Emphasis in original.) <u>Sullivan</u>, 209 Ill. 2d at 114-15.

Plaintiff cites <u>Witherell v. Weimer</u>, 118 Ill. 2d 321 (1987), a pre-<u>Sullivan</u> medical malpractice case where the supreme court applied a "prejudice" test to the admission of opinion testimony from an unlicensed physician. In <u>Witherell</u>, the court wrote:

"Language in <u>Dolan</u>, which was criticized in a dissenting opinion, suggested *** that an expert must actually hold a license in order to testify. (See also <u>Purtill v. Hess</u> (1986), 111 Ill. 2d 229, 243; <u>cf.</u> <u>Greenberg v. Michael Reese Hospital</u> (1980), 83 Ill. 2d 282.) Whether or not a license is in fact required, we are unable to perceive how the fact that [the physician] did not hold such a license prejudiced the defendant here." <u>Witherell</u>, 118 Ill. 2d at 334.

Although <u>Sullivan</u> did not include <u>Witherell</u> in its survey of prior decisions, I consider <u>Witherell</u>'s approach no longer valid after <u>Sullivan</u>. The supreme court in <u>Sullivan</u> reaffirms as unexceptionable the requirement that a medical expert hold a license in the school of medicine about which the expert proposes to give opinion testimony. <u>Sullivan</u> forecloses the notion that the admission of opinion testimony from a witness unlicensed in the relevant school of medicine can be considered harmless error, as was held in <u>Witherell</u>. Plaintiff, in fact, fully admits that <u>Sullivan</u> conflicts with <u>Witherell</u>, acknowledging that <u>Sullivan</u> "overlook[s] the commonsensical and equitable considerations that actuated the [<u>Witherell</u>] court[] to permit medically expert testimony

from unlicensed individuals who were nevertheless astute and competent expert witnesses." Plaintiff urges us to follow Witherell, but our allegiance should be to Sullivan.

The majority discounts the above precedent in favor of the statutory factors enumerated in section 8--2501 of the Code. There is no case from our supreme court employing section 8--2501 to determine whether a witness is a proper medical expert. However, though Dolan, decided in 1979, predated section 8--2501, which was enacted in 1985 (Pub. Act 84--7, eff. August 15, 1985), the remaining supreme court cases discussed above were decided after the enactment of section 8--2501. We are not free to depart from an unequivocal holding of our supreme court that licensure in the relevant school of medicine is an absolute requirement of a medical expert giving opinion testimony. The majority claims that I "disregard" section 8--2501 (slip op. at 6). To the contrary, I have duly noted section 8--2501 and its import. However, "[i]t is fundamental to our judicial system that once our supreme court declares the law on any point, its decision is binding on all Illinois courts, and we cannot refuse to follow it, because we have no authority to overrule or modify supreme court decisions" (Du Page County Airport Authority v. Department of Revenue, 358 Ill. App. 3d 476, 486 (2005)). Thus, I cannot choose whom to follow here. The majority is exactly wrong when it says that I "inappropriate[ly] *** disregard statutory authority governing the admission of expert testimony." Slip op. at 6. On the contrary, it is the majority that inappropriately holds that supreme court precedent is unsound.

The majority states that I fail to "examine Sullivan in context." Slip op. at 9. It further claims that my position would inappropriately expand Sullivan beyond its facts in that the witness in Sullivan "was never licensed in the area [of medicine] in which he was presented to opine" (slip op. at 9), but Dr. Benson was licensed in this area of medicine up to approximately five months

before he gave his opinion testimony. The majority states that "[t]here is nothing in <u>Sullivan</u> or common experience that implies or concludes that expertise exists solely and dependently on the existence of a license and that, upon termination of the license, regardless of cause, the expertise fades to black and is lost until the license is renewed." Slip. op. at 7. The first clause of this sentence may accurately state what "common experience" holds, but it does not accurately state what <u>Sullivan</u> holds. <u>Sullivan</u> holds that a "health-care expert witness must be a licensed member of the school of medicine about which the expert proposes to testify." <u>Sullivan</u>, 209 Ill. 2d at 114. Thus, for the supreme court, a witness's competence to testify in a given school of medicine is indeed dependent on the witness's licensure in that school. As for the second clause of the sentence, I see no warrant for reading into <u>Sullivan</u>'s licensure requirement an exception for a witness who, though not licensed in the relevant school of medicine when he gives his testimony, had such a license at some prior time and is otherwise qualified to offer an opinion in light of his skill and knowledge. The supreme court held in <u>Sullivan</u> that " ' in order to testify as an expert on the standard of care in a given school of medicine, the witness must <u>be</u> licensed therein.' " (Emphasis added.) <u>Sullivan</u>, 209 Ill. 2d at 114, quoting <u>Dolan</u>, 77 Ill. 2d at 285. If the supreme court did not intend to require that the licensure be concurrent with the testimony, it would have said that the witness "must be <u>or have been</u> licensed therein." Regardless of "common experience," <u>Sullivan</u> can be read but one way: the testimony of a witness cannot be considered competent medical opinion testimony unless the witness holds a medical license at the time of the testimony.

In fact, if ever there was a situation in which the supreme court would favor "common experience" over a <u>per se</u> rule requiring licensure for a medical witness, the particular facts of <u>Sullivan</u> itself presented it. The proposed witness in <u>Sullivan</u> was a doctor who sought to testify

regarding the standard of care for nurses. "Common experience" tells us that there will be at least some doctors who have enough experience with the duties of nurses (which would be uncommon experience for the common person) to opine on the duties of nurses, since "common experience" tells us that, in no small measure, nurses do what doctors tell them to do. Nevertheless, even under its particular facts, Sullivan lays out a per se rule that, irrespective of a doctor's experience, including for example his having been previously licensed as a nurse, the doctor is unqualified to testify regarding the standard of care for a nurse due to the lack of a current license in that school of medicine.

The majority persists that neither "Sullivan nor any other reported case is controlling or precedential" (slip op. at 9), and in support of this approach the majority cites reflections on the nature of precedent by federal judges, including no less a figure than Chief Justice Marshall. Slip op. at 9-10. If we were equals with our supreme court I might consider reading Sullivan as sharply as these authorities could be construed to warrant, but given our subordinate posture it is best that we hew to a more narrow path. The supreme court may revise and limit Sullivan if it sees fit to do so, but we exceed our prerogative in doing the same.

The majority's approach to precedent is strikingly reminiscent of the view vigorously advanced by the majority in People v. Luedemann, 357 Ill. App. 3d 411 (2005). The majority in Luedemann claimed that "every case like this one is sui generis in that no two factual situations are identical," and so, though "[p]recedent may provide some insight ***, common sense must be our main guide." (Emphasis added.) Luedemann, 357 Ill. App. 3d at 421. Similarly, the majority states that "Sullivan is logical and sound only as it applies to the particular facts in Sullivan" (slip op. at 10). Where the majority in Luedemann invoked "common sense" as a guide in determining which

-22-

cases were controlling, the majority here invokes "common experience" as the reason Sullivan does not control. Slip op. at 7.

In reversing our decision, the supreme court in Luedemann said:

"The central flaw in the appellate court's opinion was its failure to consider and discuss the large body of case law addressing [the relevant issue]. The appellate court freed itself from the moorings of precedent by asserting that each of these cases is 'sui generis in that no two factual situations are identical' and that, while precedent may provide some insight, 'common sense' must be a court's main guide. [Citation.] The court's failure to consider the applicable case law resulted in the court's finding a seizure based on factors that courts had not previously found to be coercive ***.

Although it is true that the facts of no two cases are ever exactly the same, that does not mean that a court is free simply to ignore an entire body of relevant case law and the principles and guidelines articulated therein." (Emphasis added.) People v. Luedemann, 222 Ill. 2d 530, 551-52 (2006).

The majority also contends that my position conflicts with Thompson v. Gordon, 221 Ill. 2d 414 (2006). In Thompson, the supreme court held that a witness need not be licensed as an engineer in order to qualify as an expert on engineering issues. The court applied the general rule that "[e]xpert testimony *** is admissible 'if the proffered expert is qualified by knowledge, skill, experience, training, or education, and the testimony will assist the trier of fact in understanding the evidence.' " Thompson, 221 Ill. 2d at 429, quoting Snelson v. Kamm, 204 Ill. 2d 1, 24 (2003). The court stated that "[w]hile licensing may be a factor to consider in determining whether an engineer is qualified to testify as an expert witness, this court does not require an engineering license as a

prerequisite to testifying." Thompson, 221 Ill. 2d at 429. The majority contends that Dr. Benson's qualifications, like those of the witness in Thompson, should be judged by the general principles governing the admissibility of expert testimony, according to which a witness's licensure in the field about which he proposes to testify is only a factor in judging his competency as an expert. Slip op. at 10-11. I cannot follow the majority's recommendation without disregarding Sullivan. The approach the majority endorses was the very approach urged unsuccessfully by the plaintiff in Sullivan. The plaintiff asked the supreme court to shun a "rigid, formalistic rule" in judging the competency of a medical expert and instead hold that the witness's lack of a license in the relevant school of medicine "should *** [go] only to the weight of his testimony and not its admissibility." Sullivan, 209 Ill. 2d at 115. Against the plaintiff's urging, the supreme court held that licensure in the relevant school of medicine is an indispensable requirement for a medical expert. Thus, a medical witness is subject to a per se rule of licensure in the medical field about which the witness proposes to give opinions. Accordingly, medical testimony is an exception to the holistic approach that otherwise governs the admission of expert opinion testimony, including, as Thompson shows, testimony about the field of engineering.

I also note that the majority's readings of Sullivan and Thompson cannot be reconciled. According to the majority, Sullivan at least sets up a per se rule that bars the testimony of "someone who had never been licensed in the school of medicine at issue." Slip op. at 8. The majority cannot maintain this interpretation of Sullivan while also believing that the "totality of the circumstances" approach of Thompson should apply to expert medical testimony, because that holistic approach does not allow for any per se requirement with respect to licensure.

The majority also relies on an amendment to section 8--2501 to support its position (see slip op. at 8-9), but I need not dwell long on that topic. The amendment allows medical expert testimony from retired witnesses who have not engaged in active practice, research, or teaching for up to five years prior to the testimony. To the extent the amendment overrules any part of Sullivan, it does not apply here, because Dr. Benson is not a retired expert and did not submit the requisite evidence of continuing education to be qualified under the amendment.

Finally, I must note my uncertainty as to why the majority affirms the exclusion of Dr. Benson's opinion testimony. The majority argues at length that Dr. Benson's testimony could not properly have been excluded for his lack of a license alone. The majority also derides the idea that Dr. Benson's lack of licensure affected his expertise. The majority states that it would do "violence to the concept of memory" to conclude that a lack of licensure, regardless of its cause, affects expertise. Slip op. at 7. However, when it comes time to consider whether to affirm the trial court's exclusion of Dr. Benson's testimony, the majority relies on the idea that "the trial court could have reasonably concluded that Dr. Benson was not qualified to testify as an expert due to the surrender of his medical license." Slip op. at 12. I am at a loss as to why, under the majority's reasoning, impugning Dr. Benson's expertise on the ground that his license was withdrawn for personal problems does not do "violence to the concept of memory" (slip op. at 7) just as much as it would on the ground of any other loss of license for reasons unrelated to expertise.

Based on Sullivan's strictures, I would conclude that the trial court did not err in barring the opinion testimony of Dr. Benson. The supreme court may very well someday revisit its holding in Sullivan, but it has not done so as of today. It is not our place to concern ourselves with the wisdom

of the supreme court's decisions for the purpose of deciding which ones we follow; it is our place

to follow the supreme court's decisions. I would do so in this case.