**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250217-U

Order filed April 13, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE CITY OF NAPERVILLE, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| | ) | Du Page County, Illinois, |
| Plaintiff-Appellee, | ) | |
| | ) | Appeal No. 3-25-0217 |
| v. | ) | Circuit No. 22-OV-1097 |
| | ) | |
| JASON D. PENICK, | ) | Honorable |
| | ) | Christina S. Kye and |
| | ) | Alexander F. McGimpsey III, |
| Defendant-Appellant. | ) | Judges, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Anderson and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  We affirm the trial court's finding that defendant was guilty of disorderly conduct in violation of local ordinance and the sentence imposed.

¶ 2    Plaintiff, the City of Naperville (City), charged defendant, Jason D. Penick, with disorderly conduct in violation of its local ordinance. Following a bench trial, the trial court found defendant guilty, sentenced defendant to court supervision, the minimum fine of $100, court costs of $100, and entered no-contact and no-entry orders. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4         On July 6, 2022, the City issued defendant a "Complaint For Ordinance Violation And Notice To Appear" (citation), alleging that defendant committed disorderly conduct in violation of section 10-2-1-1:1 of the Naperville Municipal Code (Naperville Municipal Code § 10-2-1-1:1 (adopted May 3, 2022) ("A person commits disorderly conduct when they knowingly *** [do] any act in such unreasonable manner as to provoke, make or aid in making a breach of peace ***."). The citation specified the date, time, and location of the offense as May 10, 2022, at 3:35 p.m., on "1200 Redfield Rd."

¶ 5                               A. Pretrial Proceedings

¶ 6         Defendant served a subpoena on the Naperville Police Department (Department) for reports and body-worn camera recordings. The Department complied and tendered the requested materials notwithstanding that defendant failed to obtain leave of court to engage in discovery, as required by Illinois Supreme Court Rule 575(d) (eff. June 3, 2025) ("In prosecutions for violations of ordinances, no discovery procedures shall be allowed prior to trial except by leave of court."). The case was scheduled for trial on September 13, 2023, but the City's motion to amend the citation was granted that day. Subsequently, on March 6, 2024, the City amended the citation to allege that defendant "committed the offense of disorderly conduct in that he stood close to the victim with clenched fists while cursing and speaking loudly." On April 30, 2024, defendant filed a motion to strike and dismiss the citation for failure to state a claim pursuant to section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2024)), and based on an affirmative matter, *i.e.*, that the charged conduct was protected by the first amendment, pursuant to section 2-619(a)(9) of the Code (*id.* § 2-619(a)(9)). Subsequently, on July 1, 2024, defendant's

attorney was granted leave to withdraw, and defendant was self-represented for the remainder of the case and on appeal.

¶ 7 Following argument, on July 10, 2024, the trial court denied defendant's motion to strike and dismiss the citation and, on January 15, 2025 (the scheduled trial date), denied defendant's motion for reconsideration. Prior to the start of trial, defendant made several oral motions. First, defendant sought a continuance on grounds that the case had been reassigned to a new judge, the ticketing officer was not in court, and he wished to seek interlocutory review of his motion to strike and dismiss. The trial court denied the motions, reasoning that defendant had not subpoenaed the ticketing officer and that defendant had no basis for an interlocutory appeal. Second, defendant sought additional time to review discovery to assess the evidentiary basis for the allegation that his fists were clenched during the incident. The trial court denied the motion on the basis that this was a factual issue for trial. Third, defendant sought sanctions for alleged discovery violations, arguing that the City had failed to produce a witness list and the police report. The trial court denied the motion, as defendant had in fact subpoenaed and received the report and failed to show any prejudice from the alleged discovery violations.

¶ 8 B. Trial

¶ 9 The case proceeded to a bench trial that day, on January 15, 2025. The trial court denied defendant's request to enter the police report or body-worn camera recordings into evidence on the basis that he could not lay a proper foundation for either. The City called one witness, Leah Steinhauser-Walsh—a second-grade teacher at Brookdale Elementary School (Brookdale) in Naperville. Steinhauser-Walsh testified that, on May 10, 2022, at approximately 3:25 p.m. (before the end of the school day at 3:35 p.m.), she was helping her students collect their belongings and sending them to the appropriate pickup location. When the dismissal bell rang, she escorted her

3

students out to the sidewalk. As she was bent down "fist-pumping" a student, she observed defendant standing over her and heard him screaming, "Where the f*** is my daughter." Steinhauser-Walsh further testified that defendant clenched his hands in fists and raised them to the sides of his head and that she was alarmed, concerned, and fearful that defendant was going to hit her. However, defendant neither made a motion to strike Steinhauser-Walsh nor communicated a verbal threat that he was going to strike her. Steinhauser-Walsh testified that she explained to defendant that his daughter was in the school office waiting for the daycare bus because she was not notified that defendant was going to pick up his daughter. Defendant cursed in response and ran off. The interaction lasted approximately three to five minutes. Steinhauser-Walsh testified that, after defendant left, she calmed the children and that multiple parents approached her and were concerned by what they saw. Steinhauser-Walsh further explained that she then began to cry and went into the school to explain what happened to the student services coordinator and the principal.

¶ 10    Defendant called two witnesses: Keely Schmid and Khadisia Persaud, the principal and a teacher at Brookdale, respectively. Schmid acknowledged that she previously testified in a hearing involving Steinhauser-Walsh and defendant but did not recall testimony regarding the May 10, 2022, incident. Persaud testified that she witnessed the May 10, 2022, encounter between defendant and Steinhauser-Walsh and corroborated Steinhauser-Walsh's testimony.

¶ 11    In addition, defendant testified on his own behalf. He recounted interactions with Steinhauser-Walsh prior to the May 10, 2022, incident, including an allegation that she had put her hands on his daughter's head and turned her head. According to defendant, when he confronted Steinhauser-Walsh about the prior incident, she denied the allegation, seemed " 'overly tumultuous,' " and became frazzled and upset. Regarding the May 10, 2022, incident, defendant

4

testified that he merely approached Steinhauser-Walsh, asked where his daughter was, and walked away after she responded. Defendant acknowledged that he was upset but did not recall swearing and indicated that he would not have sworn around children. He testified that the entire interaction lasted 30 seconds. According to defendant, after his conversation with Steinhauser-Walsh, he walked to the front of the school and found his daughter, and the incident ended with "a high-five and smile."

¶ 12                                C. Trial Court's Ruling

¶ 13        Following closing arguments, the trial court found that the City proved, by a preponderance of the evidence, that defendant committed disorderly conduct by knowingly doing an act in such an unreasonable manner as to provoke, make, or aid in making a breach of peace at Brookdale in violation of section 10-2-1-1:1 of the Naperville Municipal Code (Naperville Municipal Code § 10-2-1-1:1 (adopted May 3, 2022). The trial court noted that, while defendant raised the possibility of Steinhauser-Walsh's motive or bias based upon a prior allegation defendant raised against her, there was no evidence that the prior allegation was substantiated. Moreover, Persaud testified that she witnessed the May 10, 2022, encounter and corroborated Steinhauser-Walsh's testimony, and no evidence contradicted Steinhauser-Walsh's testimony regarding the students' and parents' reactions to the incident. Finally, the trial court rejected defendant's argument that an assault charge was more appropriate, as defendant himself represented that no assault occurred. The trial court also found that defendant's speech and actions were not protected by the first amendment where they occurred at an elementary school at dismissal time and on the crowded sidewalk with children. The trial court sentenced defendant to court supervision, with conditions to include that defendant have no contact with Steinhauser-Walsh and not enter the Brookdale property during

school hours; the minimum fine of $100; and court costs of $100. Defendant filed a motion to reconsider, which the trial court denied.

¶ 14    Defendant timely appealed.

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, defendant challenges the trial court's pretrial rulings, the finding of guilt, and the sentence. We address each argument in turn.

¶ 17                                 A. Pretrial Rulings

¶ 18    Defendant challenges the trial court's denial of his motion to dismiss, request for a continuance, request for discovery violation sanctions, and motions to admit the police report and body-worn camera recordings. We review the trial court's denial of the motion to dismiss *de novo*. See *Krewionek v. McKnight*, 2022 IL App (2d) 220078, ¶ 20. We review the remaining rulings for an abuse of discretion. See *People v. Pikes*, 2013 IL 115171, ¶ 12 (admissibility of evidence); *Direct Auto Insurance Co. v. Bahena*, 2019 IL App (1st) 172918, ¶ 35 (discovery sanctions); *Somers v. Quinn*, 373 Ill. App. 3d 87, 96 (2007) (continuance). An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the trial court's view. *Bahena*, 2019 IL App (1st) 172918, ¶ 35.

¶ 19    First, defendant argues that the trial court erred in denying his motion to strike and dismiss the citation. As for his argument pursuant to section 2-615, defendant contends that the citation was deficient in that it failed to plead sufficient facts, citing *People v. Nash*, 173 Ill. 2d 423 (1996). However, *Nash* is inapposite. There, our supreme court affirmed dismissal of the complaints, which alleged that the defendants " 'knowingly by the use of intimidation, disturbed the public peace' " in violation of the mob action statute (720 ILCS 5/25-1(a)(2) (West 1992)) on grounds that the allegations failed to specifically set forth the facts constituting the crime. *Nash*, 173 Ill. 2d

6

at 429-32. In this case, however, while the initial citation specified only the date, time, and location of the offense charged, the City subsequently amended the citation to include the allegation that defendant "committed the offense of disorderly conduct in that he stood close to the victim with clenched fists while cursing and speaking loudly." Accordingly, the trial court properly rejected defendant's argument that the citation failed to state a claim.

¶ 20        As for his argument pursuant to section 2-619(a)(9), defendant contends that dismissal was warranted because the citation is based "solely on protection expression." In support, defendant cites *Cohen v. California*, 403 U.S. 15 (1971), and *Brandenburg v. Ohio*, 395 U.S. 444 (1969), for the proposition that protected speech alone does not amount to disorderly conduct. However, the citation charged more than mere speech, alleging that defendant "committed the offense of disorderly conduct in that he stood close to the victim with clenched fists while cursing and speaking loudly." Thus, the trial court properly rejected defendant's argument that dismissal of the citation was warranted on constitutional grounds.

¶ 21        Second, defendant challenges the denial of his motion for a continuance. Litigants do not have an unfettered right to a continuance; the decisive factor in weighing the merits of a continuance motion is whether the moving party has exercised due diligence in proceeding with the case. *Somers*, 373 Ill. App. 3d at 96. Here, the record reflects no abuse of discretion in denying defendant's continuance request. While defendant asserted that the ticketing officer was not in court, that he needed more time to review discovery, and that the trial judge was not the same judge who had presided over the pretrial matters, none of these required the trial court to grant a continuance. Moreover, defendant sought a continuance on the day of trial, January 15, 2025. At this point, the trial had been scheduled for over three months. Defendant was self-represented, but his attorney had been granted leave to withdraw months earlier, on July 1, 2024. In addition, a self-

7

represented litigant is held to the same rules and procedures as an attorney. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78. In sum, the record reflects a lack of due diligence and no valid basis for a continuance. Accordingly, the trial court did not abuse its discretion in denying defendant's request.

¶ 22 Third, while defendant asserts that the City violated *Brady v. Maryland*, 373 U.S. 83 (1963), in allegedly failing to produce discovery, as the City points out, this is a prosecution of an ordinance violation. As such, defendant was required to, but did not, obtain leave of court to engage in discovery. See Ill. S. Ct. R. 575(d) (eff. June 3, 2025) ("In prosecutions for violations of ordinances, no discovery procedures shall be allowed prior to trial except by leave of court."). Notwithstanding, the record reflects that the City produced the materials that defendant subpoenaed, and the trial court explicitly noted that defendant failed to show any prejudice from the alleged discovery violations. Defendant makes no persuasive argument that the trial court abused its discretion in denying his request for discovery sanctions.

¶ 23 Fourth, defendant challenges the denial of his motions to admit the police report and body-worn camera recordings into evidence. Initially, we observe that body-worn camera recordings are statutorily admissible. See 50 ILCS 706/10-30 (West 2024). Police reports generally are not admissible. See *Horace Mann Insurance Co. v. Brown*, 236 Ill. App. 3d 456, 462 (1992). Here, the trial court did not abuse its discretion in denying defendant's motions to admit the report and recordings, as defendant does not dispute that he failed to secure witnesses to lay a proper foundation for their admissibility.

¶ 24                                    B. Guilty Finding

¶ 25 Defendant next challenges the trial court's finding that he violated the disorderly conduct ordinance. Initially, we note that the record on appeal does not contain a report of proceedings.

8

Illinois Supreme Court Rule 321 (eff. Oct. 1, 2021) and Rule 324 (eff. July 1, 2017) require an appellant to provide a complete record on appeal, including a report of proceedings. If a transcript is unavailable, the appellant may file an acceptable substitute, such as a bystander's report or an agreed statement of facts. *Nunez v. C&C Investments of Chicago, LLC*, 2022 IL App (1st) 211423, ¶ 33 (citing Ill. S. Ct. R. 323 (eff. July 1, 2017)). The City argues that defendant failed to comply with this requirement and that we should therefore presume that the trial court's finding of guilt was grounded in fact and law. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) ("[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant."). However, the record contains a 12-page document, entitled "Court's Summary Of Trial," and a 2-page order granting in part defendant's "Emergency Motion to Correct the Record and Enter Written Findings of Fact and Law and to Certify Discovery," entered by the trial court on February 5, 2025 (from which we derived the background set forth above). In these materials, the trial court recounts at length the trial testimony, the parties' arguments, and the basis for its ruling (as set forth *supra* section I). With consideration of these, we turn to defendant's challenge to the guilty finding.

¶ 26        Defendant was charged with disorderly conduct in violation of section 10-2-1-1:1 of the Naperville Municipal Code (Naperville Municipal Code § 10-2-1-1:1 (adopted May 3, 2022) ("A person commits disorderly conduct when they knowingly *** [do] any act in such unreasonable manner as to provoke, make or aid in making a breach of peace ***."). The City was required to prove his guilt by a preponderance of the evidence. See Ill. S. Ct. R. 578 (eff. Dec. 7, 2011) ("The

prosecuting entity must prove the ordinance violation by a preponderance of the evidence; meaning it is more likely true than not that the violation occurred."); *Village of Lisle v. Spelson*, 2019 IL App (2d) 180673, ¶ 11 (the burden of proof in a charge for violation of a municipal ordinance is a preponderance of the evidence). We review the trial court's finding of guilt under the manifest-weight-of-the-evidence standard. *Id.* A finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the finding is unreasonable, arbitrary, or not based on the evidence. *In re Marriage of Brill*, 2017 IL App (2d) 160604, ¶ 30. To the extent defendant raises issues involving the construction of the ordinance, our review is *de novo*. See *Spelson*, 2019 IL App (2d) 180673, ¶ 11.

¶ 27        Our review of the record reflects that the trial court's finding of guilt was not against the manifest weight of the evidence. Steinhauser-Walsh testified that, after defendant cursed and screamed as to the whereabouts of his daughter, he clenched his hands in fists and raised them to the sides of his head and that she was alarmed, concerned, and fearful that defendant was going to strike her. The testimony of Persaud, a Brookdale teacher who witnessed the incident, corroborated Steinhauser-Walsh's testimony. While defendant's testimony disputed these accounts, it is the trial court's function to determine witness credibility. See *People ex rel. Hartrich v. 2010 Harley-Davidson*, 2018 IL 121636, ¶ 13.

¶ 28        Still, defendant maintains that the trial court's finding of guilt violated his right to free speech, arguing again that speech alone does not amount to disorderly conduct. See *Cohen*, 403 U.S. 15; *Brandenburg*, 395 U.S. 444. However, the record reflects evidence that defendant engaged in more than speech alone, including actions involving his posture, proximity to Steinhauser-Walsh, and clenched fists. The trial court explicitly found that defendant's speech *and actions* were not protected by the first amendment where they occurred at an elementary school at

dismissal time and on the crowded sidewalk with children. In sum, we cannot say that the trial court's finding that defendant violated the disorderly conduct ordinance was against the manifest weight of the evidence.

¶ 29                                              C. Sentence

¶ 30        Defendant argues that the trial court exceeded its authority in imposing court supervision and the no-contact and no-entry orders. The City responds that these were valid penalties under the Naperville Municipal Code. The interpretation of a municipal ordinance is a question of law subject to *de novo* review. *Village of Glenview v. Zwick*, 356 Ill. App. 3d 630, 634 (2005).

¶ 31        Defendant was found guilty of disorderly conduct in violation of section 10-2-1-1:1 of the Naperville Municipal Code (Naperville Municipal Code § 10-2-1-1:1 (adopted May 3, 2022)). Chapter four of the Naperville Municipal Code, entitled "General Penalty," sets forth provisions governing the parameters of, *inter alia*, penalties and fines for violations. Relevant here, section 1-4-1:3 allows for a penalty of supervision, defining it as a "disposition of conditional and revocable release without probationary supervision, but under such conditions and reporting requirements as are imposed by the court ***." *Id.* § 1-4-1:3 (adopted Aug. 17, 1981); see also Ill. S. Ct. R. 579(b) (eff. Dec. 7, 2011) (in addition to any fine imposed for an ordinance violation, "the court may impose a sentence including restitution, or other appropriate penalties or conditions authorized by ordinance," and "[a] sentence of conditional discharge or court supervision disposition shall be permitted by ordinance"). The City points out that the no-contact and no-entry orders are valid conditions of supervision as set forth in section 1-4-1:3.

¶ 32        Defendant does not dispute that the above provisions authorize supervision and no-contact/no-entry sentencing provisions. Rather, he cites section 1-2-1 of the Illinois Municipal Code (65 ILCS 5/1-2-1 (West 2024)), which sets forth permissible fines and penalties for

11

ordinance violations. According to defendant, because section 1-2-1 does not enumerate court supervision, no-contact, or no-entry orders as penalties that may be imposed for an ordinance violation, the City exceeded its home rule authority in enacting the general penalty ordinance. The City responds that the general penalty ordinance is a valid exercise of its power as a home rule unit of local government. We agree with the City.

¶ 33    "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a). "Home rule is based on the assumption that municipalities should be allowed to address problems with solutions tailored to their local needs." *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 29. The underlying intent of section 6(a) is to give home rule units "the broadest powers possible" (see *Palm*, 2013 IL 110505, ¶ 30), and those powers are to be construed liberally (see Ill. Const. 1970, art. VII, § 6(m)). A municipality's exercise of power is valid if it pertains to local government and affairs and the legislature has not expressly preempted the exercise of home rule powers in the area. *Palm*, 2013 IL 110505, ¶ 36.

¶ 34    However, the legislature "may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit ***." Ill. Const. 1970, art. VII, § 6(h). Toward that end, legislative limitations on home rule powers must be express and specific. *Palm*, 2013 IL 110505, ¶ 31; see also 5 ILCS 70/7 (West 2024) (codifying this rule). If the legislature does not expressly limit or deny home rule power, a municipal ordinance and a state statute may operate concurrently. Specifically, "Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not

12

specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, § 6(i). For instance, in *Schillerstrom Homes, Inc. v. City of Naperville*, 198 Ill. 2d 281, 289-93 (2001), our supreme court held that an ordinance that lacked a damages remedy for the City's failure to approve a plat within a specific time period was complemented, and not preempted, by a state statute that included a remedy provision for such failure.

¶ 35        Here, defendant does not dispute that the general penalty ordinance pertains to local government and affairs. See Naperville Municipal Code § 1-4-1:3 (adopted Aug. 17, 1981). Moreover, section 1-2-1 contains no express limitation on home rule powers. 65 ILCS 5/1-2-1 (West 2024). Absent such language, the statute does not preempt the City's home rule authority exercised in its penalty ordinance. See *Shachter v. City of Chicago*, 2016 IL App (1st) 150442, ¶¶ 42-46 (rejecting argument that the monetary limit on fines set forth in section 1-2-1 preempts the power of home rule municipalities to impose a greater fine). Accordingly, the City's general penalty ordinance is a valid exercise of home rule power. We therefore reject defendant's argument that the trial court exceeded its authority in imposing court supervision and the no-contact and no-entry orders.

¶ 36        As a final matter, defendant challenges his sentence on grounds of procedural and substantive due process and claims of unfairness and disproportionality. However, he fails to develop these arguments or provide relevant supporting authority. See *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 36 (a point not supported by citation to relevant authority fails to satisfy the requirements of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020)). Moreover, our review of the record reflects no persuasive basis upon which to vacate defendant's sentence.

13

¶ 37                          III. CONCLUSION

¶ 38          For the reasons stated, we affirm the trial court's judgment.

¶ 39          Affirmed.