# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Colburn v. Mario Tricoci Hair Salon & Day Spas, Inc.*, 2012 IL App (2d) 110624

| | |
|---|---|
| Appellate Court Caption | VIRGINIA COLBURN, Plaintiff-Appellant, v. MARIO TRICOCI HAIR SALONS AND DAY SPAS, INC., Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-11-0624 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | April 30, 2012<br><br>June 26, 2012<br>June 26, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action alleging defendant hair salon and spa negligently recommended and performed a "Vitamin C facial" on plaintiff following a "seaweed facial" that irritated her skin, the entry of summary judgment for defendant was upheld on appeal where plaintiff failed to present evidence by way of an expert qualified to render an opinion on the standard of care applicable to an esthetician at the time of the occurrence in 2004. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 09-L-1305; the Hon. John T. Elsner, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Robert K. Leyshon, of Evins & Sklare, Ltd., of Chicago, for appellant.

Robert Marc Chemers, Suzanne M. Crowley, and Richard M. Burgland, all of Pretzel & Stouffer, Chtrd., of Chicago, for appellee.

Panel     JUSTICE ZENOFF delivered the judgment of the court, with opinion.

Justices Hutchinson and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1  Plaintiff, Virginia Colburn, sued defendant, Mario Tricoci Hair Salons & Day Spas, Inc., alleging that she sustained injuries when defendant negligently recommended and performed a "Vitamin C facial" on January 13, 2004, following a "seaweed facial" that had irritated her skin on January 9, 2004. Plaintiff appeals from the trial court's order barring her esthetician[1] expert witness's opinion testimony and granting summary judgment in favor of defendant on the basis that plaintiff had presented no evidence of the standard of care applicable to an esthetician at the time of the occurrence. For the following reasons, we affirm.

¶ 2            BACKGROUND

¶ 3  Plaintiff originally initiated an action against defendant in 2006, but voluntarily dismissed the action in September 2009 pursuant to section 2-1009 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1009 (West 2010)). The record on appeal begins with the commencement of plaintiff's refiled action in October 2009.

¶ 4  Plaintiff's first amended complaint in the refiled action alleged the following. On January 9, 2004, plaintiff was a business invitee of defendant and received a seaweed facial. "[I]mmediately thereafter the very area where the facial had been applied turned red." Plaintiff called defendant, and a manager instructed her "to come back to get a Vitamin C facial." Plaintiff received a second facial, "which worsened the condition." Defendant owed plaintiff a duty "to exercise ordinary and reasonable care and caution *** so as not to cause harm and injury to its patrons." Defendant violated that duty in various ways, including that defendant "improperly applied chemicals and/or products to [p]laintiff's face causing permanent burns to [p]laintiff's face" and "[c]arelessly and negligently recommended and applied a second facial when [defendant] knew or should have known, based on the reaction to the first facial, that it was not safe to do so." As a result of defendant's negligence,

---

[1]The parties spell this word "aesthetician," but the Illinois legislature, in the licensing statute for estheticians, has used the spelling "esthetician." See 225 ILCS 410/3A-1(B) (West 2010).

"[p]laintiff's face has been permanently disfigured, discolored, and scarred, [and] the [p]laintiff has developed an allergic and sensitive condition to contaminants in the air and a good number of smells and presently cannot go into the sun."

¶ 5    According to plaintiff's brief, she disclosed Natalia Doran pursuant to Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2007) as her retained esthetician expert witness in the original action. However, nothing in the record indicates that the parties completed any further expert discovery before plaintiff voluntarily dismissed the action.

¶ 6    After plaintiff commenced her refiled action, the trial court ordered plaintiff to disclose her retained expert witnesses pursuant to Rule 213(f)(3) on or before June 1, 2010. The trial court subsequently extended that deadline to August 1, 2010, and then to October 7, 2010. On November 1, 2010, plaintiff disclosed Dr. Jeffrey Coe as her retained expert witness. Plaintiff's witness disclosure stated that Dr. Coe would testify to his opinion that the January 13, 2004, facial caused plaintiff to suffer various specified injuries. According to defendant's brief, when defendant took Dr. Coe's deposition on March 10, 2011, Dr. Coe testified that he had no opinion on the standard of care applicable to an esthetician. The record does not contain a transcript of Dr. Coe's deposition.

¶ 7    On April 18, 2011, plaintiff filed her "Motion to Disclose New (f)(3) Standard of Care Witness." Plaintiff alleged the following. She had previously disclosed an esthetician expert witness[2] who would testify to her opinion that defendant did not meet the applicable standard of care. Plaintiff's relationship with her expert had broken down to the extent that she could not continue with her as an expert. Plaintiff's medical causation expert[3] would remain the same and had been deposed. Plaintiff requested until April 29, 2011, to disclose a new esthetician expert witness.

¶ 8    The same day, the trial court entered an order directing plaintiff to disclose her new expert witness and corresponding report by April 29, 2011, at 4:30 p.m. or plaintiff would be barred from disclosing an esthetician expert.

¶ 9    On April 29, 2011, plaintiff sent a letter to defendant, purporting to enclose the Rule 213(f)(3) report of Pamela Stieber. Plaintiff stated that Stieber had e-mailed the report the night before and that it was therefore unsigned. The report consisted of a letter from Stieber to plaintiff's counsel and an attached one-page document. The letter stated the following. Stieber was an esthetician licensed in the state of Illinois since 2006. She had attended Pivot Point International Academy. She had experience with various skin and facial treatments and techniques, including microdermabrasion, chemical peels, facials, and laser treatments for rosacea, sun damage, acne, wrinkles, and scars.

¶ 10    The one-page document attached to the letter stated that Stieber had reviewed the depositions of plaintiff, Dr. Coe, defendant's spa coordinator and manager, defendant's corporate spa director, and one of defendant's estheticians. She had also reviewed plaintiff's handwritten summary of the incident, photographs of plaintiff, a book entitled *Milady's*

[2]We infer that plaintiff was referring to Natalia Doran.

[3]We infer that plaintiff was referring to Dr. Jeffrey Coe.

-3-

*Standard Esthetics Fundamentals Manual*, defendant's esthetics training manual, defendant's written discovery responses, material safety data sheets, a "Repechage review summary sheet," and a product ingredient listing sheet. None of these documents were attached to the report, and none are contained in the record.

¶ 11 The document then stated the following under the heading "Personal Opinion of Pamela Stieber":

> "When [p]laintiff, Virginia Colburn returned for her SECOND treatment on January 13, 2004, with demarcation from treatment dated January 9, 2004, I would have refused to treat Ms. Colburn. Upon reviewing the documents stated above, it is in my opinion when Ms. Colburn returned to Mario Tricoci on January 13, 2004, she should not have been treated. I feel this second treatment to Ms. Colburn, which included a steam treatment, exasperated [*sic*] her condition. As stated: MILADY'S Standard Esthetics Fundamentals Manual, Part 3 'The Skin Sciences' page 216, under CONTRAINDICATIONS, it states that a skin disorder or skin irritation can all contraindicate a service. Also, contraindications indicator shown in MARIO TRICOCI AESTHETIC TRAINING MANUAL, Facial Training–Sec. 2: Skin Analysis, Part B, Page 1, first bullet point asks:

> > Question[:] '*Do you use vaporizers'?*

> > Answer: *Yes, we do use vaporizers in every Facial Treatment, unless a condition is present in which heat is a contraindication.*

> In Virginia Colburn's deposition transcript, she stated that her skin was irritated and blotchy, page 98, line number 23 and in her personal diary, dated Friday, January 9, 2004, she stated she experienced pain and redness of her face.

> **It is my personal opinion when Virginia Colburn returned for her second treatment on January 13, 2004 upon consulting and viewing client's skin, she should <u>not</u> have been treated, and she should have <u>immediately</u> been referred for medical attention.**" (Emphases in original.)

¶ 12 Defendant then filed its "Motion to Bar and for Summary Judgment." Defendant asked the court to strike Stieber's purported Rule 213(f)(3) report on the following grounds: (1) Stieber was not a licensed esthetician in 2004 when the incident occurred; (2) Stieber did not identify the standard of care for an esthetician in 2004; (3) Stieber gave her "personal opinion" rather than her professional opinion; and (4) Stieber did not identify the specific actions that violated a standard of care. Defendant then asked the court to enter summary judgment in its favor because "absent a properly disclosed expert to establish and address standard of care issues, plaintiff is unable to proceed with her alleged cause of action against the defendant."

¶ 13 In response to defendant's motion, plaintiff argued that her disclosure was sufficient to qualify Stieber as an expert. Plaintiff contended that Stieber need not have been licensed in 2004 to be qualified to give her opinion as to the "conduct and standard" of an esthetician. Plaintiff maintained that Stieber's references to *Milady's Standard Esthetics Fundamentals Manual* and to defendant's own esthetics training manual established that she was giving her opinion on the standard of care applicable to defendant.

¶ 14 Plaintiff further argued that summary judgment would be improper because this was a "standard negligence case" in which the standard of care was that of a reasonable person, not a "medical arts" case. Plaintiff contended that defendant had "not demonstrated that there was not negligence under a general negligence standard."

¶ 15 Plaintiff attached Stieber's affidavit to her response. The affidavit largely repeated the disclosures contained in Stieber's letter and one-page report, but included the following revised paragraph:

> "In my professional opinion, when Virginia Colburn returned for her second treatment on January 13, 2004 with demarcation from treatment on January 9, [s]he should have been refused any treatment and referred to a physician. This demarcation was also described as painful, irritated, and blotchy skin. Refusal of treatment and referral was the appropriate standard of care under with [*sic*] the skin conditions present. When Ms. Colburn was treated on January 13, 2004, this violated the standard of care and exacerbated and aggravated her skin condition."

Stieber also stated in the affidavit that both *Milady's Standard Esthetics Fundamentals Manual* and defendant's esthetics training manual "support the opinion that treatment should not have been provided since there was pain, redness and irritated and blotchy skin present when [plaintiff] presented for treatment on January 13, 2004."

¶ 16 The record does not contain a transcript of the hearing on defendant's motion. On June 16, 2011, the trial court entered a written order in which it barred Stieber from testifying as an expert and entered summary judgment in defendant's favor. The court first concluded that it did "not have the discretion to not consider the [Stieber] affidavit as the [plaintiff's] 213(f)(3) disclosure." The court went on:

> "The next issue is whether Ms. Steiber [*sic*] can give an opinion. The affiant attended Pivot Point International Academy and graduated in 2006. She then received training from a doctor. The incident occurred on January 13, 2004[,] more than two years prior to this person graduating from school. The affiant was not licensed in 2004. The affiant does not state she has knowledge as to the standard for aestheticians in 2004; nor does she state a basis for her knowledge of standards that existed in 2004. Finally, the opinions reached are based upon her schooling, training, licensing and experience. All of the basis [*sic*] for her ability to give an opinion occurred more than 2 years after the incident. As the defendant points out, the affiant does not show that she has knowledge of the standard of care a professional aesthetician with the same knowledge skill and ability would have used under similar circumstances in January, 2004. The motion in limine to bar this witness from giving opinion testimony is granted.
>
> The final issue is whether there is a genuine issue of material fact and if not whether the defendant is entitled to judgment as a matter of law. Since there is no evidence of the standard of care in January, 2004 or an opinion as to the breach of that standard, then the defendant is entitled to judgment as a matter of law.
>
> The motion for summary judgment is granted."

¶ 17 This timely appeal followed.

¶ 18                                         ANALYSIS

¶ 19        We begin by clarifying what is not at issue in this appeal. Both parties spend significant time in their briefs arguing over whether plaintiff's disclosure of Pamela Stieber on April 29, 2011, satisfied the requirements of Rule 213(f)(3). However, the trial court explicitly stated that it was considering Stieber's affidavit as plaintiff's Rule 213(f)(3) disclosure. The court's order stated that "[t]he court does not have the discretion *to not* consider the affidavit as the 213(f)(3) disclosure." (Emphasis added.) A double negative is "a reiterated denial that equals an affirmative." Webster's Third New International Dictionary 678 (1993). Plaintiff's compliance with Rule 213(f)(3) is not at issue on appeal.

¶ 20                               Defendant's Motion to Bar

¶ 21        The first issue on appeal is whether it was proper for the trial court to bar Stieber from giving her opinion on the standard of care applicable to an esthetician at the time of the occurrence. "[I]t is well settled that the decision whether to admit expert testimony is within the sound discretion of the trial court." *Thompson v. Gordon*, 221 Ill. 2d 414, 428 (2006) (*Thompson I*). " 'The burden of establishing the qualifications of an expert witness is on the proponent of his testimony ***.' " *Lombardo v. Reliance Elevator Co.*, 315 Ill. App. 3d 111, 123 (2000) (quoting *People v. Jordan*, 103 Ill. 2d 192, 208 (1984)). "A person will be allowed to testify as an expert if his experience and qualifications afford him knowledge that is not common to laypersons, and where his testimony will aid the trier of fact in reaching its conclusions." *Thompson I*, 221 Ill. 2d at 428. " 'There is no predetermined formula for how an expert acquires specialized knowledge or experience and the expert can gain such through practical experience, scientific study, education, training or research.' " *Thompson I*, 221 Ill. 2d at 428-29 (quoting *People v. Miller*, 173 Ill. 2d 167, 186 (1996)). An expert need not have formal academic training or specific degrees, but only "knowledge and experience beyond that of an average citizen." *Thompson I*, 221 Ill. 2d at 429.

¶ 22        We review for an abuse of discretion a trial court's decision not to allow a witness to testify as an expert. *Somers v. Quinn*, 373 Ill. App. 3d 87, 95-96 (2007). A trial court abuses its discretion only where no reasonable person would take the position adopted by the court. *Somers*, 373 Ill. App. 3d at 95-96. "The test is not whether the reviewing court agreed with the trial court's decision, but whether the lower court 'acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted.' " (Internal quotation marks omitted.) *Somers*, 373 Ill. App. 3d at 96 (quoting *American Federation of State, County & Municipal Employees, Council 31 v. Schwartz*, 343 Ill. App. 3d 553, 559 (2003)).

¶ 23        Our supreme court held in *Thompson I* that the lack of an Illinois engineering license alone was an insufficient basis on which to bar a witness from testifying as an expert to the standard of care for professional engineers in Illinois. *Thompson I*, 221 Ill. 2d at 429. The court held that, while licensing may be one factor to consider in determining whether a witness is qualified to testify as an expert, it is not a prerequisite and must be considered along with other relevant factors. *Thompson I*, 221 Ill. 2d at 429. The court remanded to the

trial court to properly determine the witness's qualifications based on all of the relevant criteria. *Thompson I*, 221 Ill. 2d at 430.

¶ 24    In *Somers*, the appellate court similarly held that the trial court erred in concluding that a witness who had lost his license to practice medicine was automatically barred from testifying as an expert to the standard of care for a physician. *Somers*, 373 Ill. App. 3d at 93. The court in *Somers* did not remand for further proceedings, however, because, although the trial court had erroneously concluded that the witness's lack of a license automatically disqualified him from testifying as an expert, the trial court had also stated that "even if it had discretion to decide to allow [the witness's] testimony, it would still exclude the testimony." *Somers*, 373 Ill. App. 3d at 90, 95-96. The *Somers* court held that the trial court could have reasonably concluded that the witness was not qualified to testify as an expert based on the loss of his license and other factors. *Somers*, 373 Ill. App. 3d at 96.

¶ 25    Plaintiff would have us interpret the trial court's June 16, 2011, order as erroneously concluding that Stieber was automatically barred from testifying as an expert because she received her esthetician's license in 2006, two years after the occurrence. Plaintiff asserts that the trial court "ruled that since Ms. Steiber [*sic*] was first licensed in 2006 and the conduct occurred in 2004, [p]laintiff could not establish the standard of care in 2004." Plaintiff argues that "[j]ust because Ms. Steiber [*sic*] was not licensed in 2004 does not mean that she cannot testify to a standard of care that she is familiar with that existed at that time."

¶ 26    While we agree with plaintiff that Stieber's lack of a license or a specialized degree in 2004 did not automatically disqualify her from testifying as an expert to the standard of care in 2004, we decline to interpret the trial court's order as applying such an absolute rule. The trial court considered Stieber's education and experience in making its decision–the court acknowledged that "the opinions reached are based upon her schooling, training, licensing and experience"–but the court nevertheless concluded that she was unqualified as an expert because she did not "state a basis for her knowledge of standards that existed in 2004" and because she did "not show that she had knowledge of the standard of care a professional aesthetician with the same knowledge skill and ability would have used under similar circumstances in January, 2004."

¶ 27    While it is conceivable that, despite her lack of a specialized degree or an esthetician's license in 2004, Stieber could have been qualified to testify as an expert to the standard of care applicable to an esthetician in 2004, it was plaintiff's burden to present sufficient evidence to the court to establish her qualifications. See *Lombardo*, 315 Ill. App. 3d at 123 (the burden of establishing an expert witness's qualifications is on the proponent of the testimony). Again, there is not a " 'predetermined formula' " for acquiring specialized knowledge or experience that will qualify a witness as an expert. *Thompson I*, 221 Ill. 2d at 428-29 (quoting *Miller*, 173 Ill. 2d at 186). An expert can acquire specialized knowledge in a number of ways, including " 'through practical experience, scientific study, education, training or research.' " *Thompson I*, 221 Ill. 2d at 428-29 (quoting *Miller*, 173 Ill. 2d at 186). Plaintiff simply did not present sufficient information to satisfy the court that Stieber was qualified to give her opinion on the standard of care for an esthetician in 2004.

¶ 28    The shortfalls in plaintiff's disclosure and in Stieber's affidavit were apparent. Although

Stieber stated that she had experience using various products and techniques, she did not state whether the same products and techniques were used in 2004. Stieber also stated that both *Milady's Standard Esthetics Fundamentals Manual* and defendant's esthetics training manual supported her opinions, but she did not state whether those materials had been published prior to 2004 or that they established the standard of care in 2004. In her brief, plaintiff conclusively states that "Mario Tricoci's policies and the industry treatise were in existence on the date of the alleged negligence," but plaintiff offers no citation to the record to establish this, and the materials are not included in the record. Given that Stieber was not licensed until 2006, it was critical for plaintiff to establish how Stieber became an expert on the standard of care as it existed in 2004. Simply stating in her affidavit that "[r]efusal of treatment and referral was the appropriate standard of care" was not enough.

¶ 29     At oral argument, plaintiff asked this court to infer that, because defendant tendered its esthetics training manual in response to plaintiff's discovery requests, the training manual was the one in effect at the time of the occurrence. We decline to do so. It was plaintiff's burden to present a sufficiently complete record on appeal to support a claim of error, and any doubts that arise from the incompleteness of the record will be resolved against her. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Moreover, plaintiff conceded at oral argument that she did not present a copy of the training manual to the trial court, and a reviewing court cannot consider evidence that was not before the trial court when it rendered its decision. *Whittmanhart, Inc. v. CA, Inc.*, 402 Ill. App. 3d 848, 852 (2010).

¶ 30     Based on the foregoing, we cannot say that the trial court abused its discretion in barring Stieber from giving her opinion on the standard of care applicable to an esthetician at the time of the occurrence. The trial court did not apply an erroneous categorical rule, but exercised its discretion by assessing the various bases for Stieber's opinion and concluding that those bases were insufficient to qualify her as an expert. The court did not act " 'arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceed[ ] the bounds of reason and ignore[ ] recognized principles of law.' " (Internal quotation marks omitted.) *Somers*, 373 Ill. App. 3d at 96 (quoting *Schwartz*, 343 Ill. App. 3d at 559).

¶ 31                          Defendant's Motion for Summary Judgment

¶ 32     The next issue is whether the trial court erred in granting summary judgment in favor of defendant. Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010); *Thompson v. Gordon*, 241 Ill. 2d 428, 438 (2011) (*Thompson II*). The purpose of summary judgment is not to try a question of fact, but to determine whether any genuine issue of fact exists to be tried. *Thompson II*, 241 Ill. 2d at 438. In determining this, the court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). "Summary judgment should be granted only when the right of the moving party is clear and free from doubt." *Thompson II*, 241 Ill. 2d at 438. We review *de*

*novo* an order granting summary judgment. *Thompson II*, 241 Ill. 2d at 438.

¶ 33    The party moving for summary judgment bears the burden of proof and the initial burden of production. *Pecora v. County of Cook*, 323 Ill. App. 3d 917, 933 (2001). The moving party can meet the initial burden of production either "(1) by affirmatively disproving the plaintiff's case by introducing evidence that, if uncontroverted, would entitle the movant to judgment as a matter of law (traditional test) [citation], or (2) by establishing that the nonmovant lacks sufficient evidence to prove an essential element of the cause of action (*Celotex*[4] test) [citations]." *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 688-89 (2000). If the moving party meets the initial burden of production, then the burden of production shifts to the nonmoving party, who must then present some factual basis that would arguably entitle it to judgment as a matter of law. *Pecora*, 323 Ill. App. 3d at 933; *Williams*, 316 Ill. App. 3d at 689. A court should grant summary judgment on a *Celotex*-type motion "only when the record indicates that a plaintiff has had extensive opportunities to establish her case but has failed in any way to demonstrate that she could [do so]." *Williams*, 316 Ill. App. 3d at 694.

¶ 34    Defendant's motion for summary judgment was a *Celotex*-type motion based on the argument that (1) plaintiff was required to prove the applicable standard of care through expert testimony, (2) plaintiff had failed to disclose an expert who was qualified to give an opinion on the standard of care, and (3) plaintiff was barred from doing so because the deadline for disclosure of plaintiff's experts had passed. Plaintiff does not argue on appeal that defendant failed to meet its initial burden of production. The sole issue is whether, once the burden of production shifted to her, plaintiff presented a sufficient factual basis that would arguably entitle her to judgment as a matter of law.

¶ 35    Plaintiff alleged that defendant was negligent in recommending and performing a "Vitamin C facial" four days after defendant had performed a "seaweed facial" that irritated plaintiff's skin. The elements of a cause of action for negligence are (1) a duty owed to the plaintiff by the defendant, (2) a breach of that duty, and (3) an injury proximately caused by the breach. *Wilfong v. L.J. Dodd Construction*, 401 Ill. App. 3d 1044, 1051 (2010). "The standard of care, also known as the standard of conduct, falls within the duty element." *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 294 (2000).

¶ 36    "In an ordinary negligence case, the standard of care required of a defendant is to act as would an 'ordinary careful person' or a 'reasonably prudent' person." *Jones*, 191 Ill. 2d at 295 (quoting *Advincula v. United Blood Services*, 176 Ill. 2d 1, 22 (1996)). Generally, no expert testimony is necessary to prove the standard of care in an ordinary negligence case. *Jones*, 191 Ill. 2d at 295 (citing *Advincula*, 176 Ill. 2d at 24).

¶ 37    "In contrast, in a professional negligence case, the standard of care required of a defendant is to act as would an 'ordinarily careful professional.' " *Jones*, 191 Ill. 2d at 295

---

[4]In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the United States Supreme Court recognized that a defendant moving for summary judgment could meet its initial burden of production by " 'pointing out to the *** court *** that there is an absence of evidence to support the nonmoving party's case.' " *Pecora*, 323 Ill. App. 3d at 934 (quoting *Celotex*, 477 U.S. at 325).

(quoting *Advincula*, 176 Ill. 2d at 23). "Pursuant to this standard of care, professionals are expected to use the same degree of knowledge, skill and ability as an ordinarily careful professional would exercise under similar circumstances." *Jones*, 191 Ill. 2d at 295. Generally, expert testimony is necessary to prove the standard of care in a professional negligence case. *Studt v. Sherman Health Systems*, 2011 IL 108182, ¶ 20; *Jones*, 191 Ill. 2d at 295. "This requirement is based on the simple fact that without expert testimony, jurors, not skilled in the profession, are not equipped to judge the professional's conduct." *Studt*, 2011 IL 108182, ¶ 20. "Courts have recognized two exceptions to this rule: where the professional's conduct is so grossly negligent, or the procedure so common, that the jury can readily appraise it without the need for expert testimony." *Studt*, 2011 IL 108182, ¶ 20 (citing *Jones*, 191 Ill. 2d at 278).

¶ 38    We have already determined that plaintiff failed to present competent expert testimony on the standard of care applicable to an esthetician in 2004. Our decision on that issue is supported by the consideration that plaintiff "had extensive opportunities to establish her case" (*Williams*, 316 Ill. App. 3d at 694), but nevertheless failed to disclose a qualified expert witness. This was not a situation in which granting a *Celotex*-type motion was improper because the nonmoving party had not yet had an opportunity to complete necessary discovery. See *Williams*, 316 Ill. App. 3d at 690 (*Celotex*-type motion filed only 13 months following filing of complaint was premature); *Hansbrough v. Kosyak*, 141 Ill. App. 3d 538, 549 (1986) (motion filed only 10 months after complaint was filed). Plaintiff filed her initial action in 2006, and defendant did not move for summary judgment until 2011, after the court had given plaintiff numerous opportunities to disclose an expert. The court even gave plaintiff one more opportunity when it considered Stieber's affidavit as her Rule 213(f)(3) disclosure.

¶ 39    Although plaintiff argued in her response to defendant's summary judgment motion in the trial court that this was a "standard negligence case" in which the standard of care was that of a reasonable person, not a "medical arts" case, plaintiff has forfeited this argument on appeal. Nowhere in plaintiff's brief does she suggest that this is an ordinary negligence case, rather than a professional negligence case, or that expert testimony was not necessary to prove the standard of care. Points not argued in an appellant's brief are forfeited. Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) ("Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."); *People v. Evans*, 405 Ill. App. 3d 1005, 1007 (2010) (applying Rule 341(h)(7) to an argument not raised in the appellant's brief). We decline to overlook plaintiff's forfeiture of the issue and to *sua sponte* research the issues, formulate arguments, and then decide the issues. See *Skidis v. Industrial Comm'n*, 309 Ill. App. 3d 720, 724 (1999) (stating that "this court will not become the advocate for, as well as the judge of, points an appellant seeks to raise").

¶ 40    At oral argument, plaintiff maintained that she had structured her brief in such a way that it effectively raised the argument that this is an ordinary negligence case. She contended, for example, that she chose to cite *Van Holt v. National R.R. Passenger Corp.*, 283 Ill. App. 3d 62 (1996), specifically because it involved an expert testifying in an ordinary negligence case. However, as discussed below, plaintiff's brief gave the impression that she was conceding that this is a professional negligence case. Moreover, the court in *Van Holt* simply

-10-

rejected the defendants' argument on appeal that the trial court had erred in allowing the plaintiffs' expert to give opinions that related to matters within jurors' common knowledge. *Van Holt*, 283 Ill. App. 3d at 70. The court in *Van Holt* placed no significance on the consideration that the case, which involved a slip and fall, was governed by an ordinary negligence standard. See *Van Holt*, 283 Ill. App. 3d at 70. An appellant's brief must contain "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008). Citing a case and hoping that the court infers from its facts the appellant's contentions is not adequate.

¶ 41    Our decision not to overlook plaintiff's forfeiture is supported by the consideration that plaintiff seems to concede that this is a professional negligence case. In her brief, she refers to esthetics as a "profession." She asserts that Stieber's "[p]rofessional [o]pinion" established the standard of care. In arguing that the trial court should have qualified Stieber as an expert, plaintiff points out that "Ms. Stieber had to go to school to become an aesthetician," that "[t]he State of Illinois has decided to impose a licensing requirement for aestheticians," and that "[t]here are products involved which have ingredients which an average person might not have any knowledge of or understand." None of plaintiff's arguments suggests that estheticians are not professionals subject to a professional negligence standard.

¶ 42    Additionally, although plaintiff argues that she could establish the standard of care either through *Milady's Standard Esthetics Fundamentals Manual* or through defendant's training manual, she refers to these materials as being admissible only through Stieber's expert testimony. For example, plaintiff asserts that she can "prove the 2004 standard of care through Ms. Stieber's statement of the standard of care as created by the [d]efendant's own policies." As we have mentioned, plaintiff did not attach copies of the publication or the training manual to her response to defendant's summary judgment motion, and the materials are not contained in the record on appeal. Plaintiff effectively concedes the necessity of Stieber's testimony to prove her case.

¶ 43    Based on the foregoing, we conclude that, once the burden of production shifted to her, plaintiff did not meet her burden of presenting a sufficient factual basis that would arguably entitle her to judgment as a matter of law. We therefore conclude that it was proper for the trial court to grant defendant's motion for summary judgment.

¶ 44                              CONCLUSION

¶ 45    For the above reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 46    Affirmed.

-11-