2018 IL App (4th) 170469

NO. 4-17-0469

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED

August 14, 2018
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| REVEREND CHARLES ORR, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | McLean County |
| THE FOURTH EPISCOPAL DISTRICT AFRICAN | ) | No. 13L88 |
| METHODIST EPISCOPAL CHURCH, an Illinois | ) | |
| Corporation; BISHOP JOHN R. BRYANT, Individual- | ) | |
| ly and as Bishop of the African Methodist Episcopal | ) | |
| Church, Illinois Conference; TAMARA | ) | |
| HENDERSON-HIGHTOWER, Individually; and | ) | |
| REVEREND TYSON J. PARKS, Individually and as | ) | |
| Presiding Elder of the African Methodist Episcopal | ) | |
| Church, Illinois Conference, | ) | |
|     Defendants | ) | |
| | ) | |
| (The Fourth Episcopal District African Methodist | ) | |
| Episcopal Church, an Illinois Corporation; Bishop | ) | |
| John R. Bryant, Individually and as Bishop of the Afri- | ) | |
| can Methodist Episcopal Church, Illinois Conference; | ) | |
| and Reverend Tyson J. Parks, Individually and as Pre- | ) | |
| siding Elder of the African Methodist Episcopal | ) | |
| Church, Illinois Conference, | ) | Honorable |
|     Defendants-Appellees). | ) | Paul Lawrence, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Presiding Justice Harris and Justice Cavanagh concurred in the judgment and
opinion.

**OPINION**

¶ 1        In May 2013, plaintiff, Reverend Charles Orr, filed a four-count complaint against

the Fourth Episcopal District African Methodist Episcopal Church (Fourth District AME

Church), Bishop John R. Bryant (John), Tamara Henderson-Hightower (Tamara), and Reverend

Tyson J. Parks (Tyson). The claims raised in the complaint were (1) defamation, (2) defamation *per se*, (3) false light, and (4) intentional infliction of emotional distress. Plaintiff's complaint arose over allegations of sexual misconduct and how the church handled those allegations.

¶ 2        In June 2013, Tyson, John, and the Fourth District AME Church (collectively, the defendants) filed an answer. The answer alleged the ecclesiastic abstention doctrine as a defense, specifically asserting that any republication of the allegedly defamatory statements occurred within the internal disciplinary process of the church.

¶ 3        In November 2016, defendants filed a motion for summary judgment, arguing that the ecclesiastic abstention doctrine prohibited the trial court from adjudicating this matter. In March 2017, plaintiff filed a response, arguing that the doctrine was not an automatic bar to the court adjudicating this case. Instead, plaintiff argued that this case could be decided under neutral principles of law.

¶ 4        In April 2017, the trial court granted defendants' motion for summary judgment. The court concluded that (1) the ecclesiastic abstention doctrine applied and (2) insufficient admissible evidence had been offered to establish plaintiff's causes of action.

¶ 5        Plaintiff appeals, arguing that (1) the ecclesiastic abstention doctrine does not apply, (2) the case can be decided under neutral principles of law, and (3) sufficient evidence was presented to establish his causes of action. We conclude that because the ecclesiastic abstention doctrine applies, this case cannot be decided under neutral principles of law. Accordingly, we affirm the trial court's grant of summary judgment.

¶ 6                                I. BACKGROUND

¶ 7        We glean the following information from the extensive factual record of this case, which includes depositions and internal church documents.

¶ 8                        A. The African Methodist Episcopal Church

¶ 9         Before discussing the allegations of this case, we will discuss the structure of the African Methodist Episcopal Church (AME Church), the applicable rules proscribing sexual misconduct, and the ecclesiastic tribunals established to adjudicate claims of sexual misconduct. We will also mention the various positions that the plaintiff, defendants, and other individuals occupied within this organization.

¶ 10                      1. *The Structure of the AME Church*

¶ 11        The AME Church is an international religious organization with a hierarchical structure. The AME Church is divided into 20 districts. A bishop presides over each district. A district is further divided into conferences. Conferences are further divided into regional districts. A presiding elder manages each regional district and reports to the respective bishop. Individual AME Churches are within regional districts. A pastor manages an individual AME church and reports to the local presiding elder.

¶ 12        John is the bishop for the Fourth District AME Church. The Fourth District AME Church is divided into five conferences. One such conference is the Illinois Conference. The Illinois Conference is divided into the North District and the South District. Tyson is the presiding elder for the North District. Plaintiff was the pastor of the Wayman AME Church, which is located in the North District of the Illinois Conference. The following graph summarizes this information.



¶ 13                    2. *The Book of Discipline and Sexual Harassment*

¶ 14            The Doctrine and Discipline of the African Methodist Episcopal Church (Book of Discipline) governs the internal discipline of the AME Church. The Book of Discipline is applicable to church doctrine, church membership, the clergy, and methods of worship.

¶ 15            The Book of Discipline prohibits sexual harassment by AME Church ministers, stating that sexual harassment "by representatives of the Church is a betrayal of a sacred trust, and a sinful abuse of power for which consequences are necessary and appropriate." Generally speaking, the Book of Discipline defines sexual harassment as "unwelcome sexual advances, requests for sexual favors, and other verbal or non-verbal conduct of a sexually offensive nature" that occurs in a workplace setting.

¶ 16            The Book of Discipline also establishes a complex system for reporting and adjudicating claims of sexual misconduct against members of the clergy. A victim of sexual harassment may report the allegation to his or her local minister. The person receiving this information

must then make a written record of the complaint within 48 hours. The accuser then has seven days to submit a written complaint. The complaint must be in writing, sworn under penalty of perjury, and sent via certified mail to the Judicial Committee. The complaint should contain a description of the facts giving rise to the claim.

¶ 17        The Judicial Committee, which acts like a grand jury, serves as the investigative body of the AME Church. This committee gathers evidence and investigates claims. While performing its role, the Judicial Committee must act confidentially and can discuss the matter only with other individuals responsible for adjudicating the case. Breach of confidentiality "shall be charged and tried pursuant to the relevant provisions" of the Book of Discipline.

¶ 18        The Judicial Committee determines whether there is sufficient evidence to support the allegations of sexual misconduct. If the Judicial Committee finds that the allegations are unfounded, the case is dismissed. If the Judicial Committee finds there is sufficient evidence to support the allegation, the matter is referred to the Trial Committee for a hearing.

¶ 19        The Trial Committee, which acts as the trier of fact, determines whether the allegations in the complaint are "sustained, unsustained, or neither sustained nor unsustained." If the Trial Committee determines that the allegations are sustained, the Book of Discipline provides for a range of punishments ranging from a six-month suspension to permanent termination.

¶ 20        The Book of Discipline also established an appeals system. The Triers of Appeals, which serves as an appellate court, examines the charges, specifications, and the judgment of the "lower" courts. The Triers of Appeals also determines whether defendant's "due process" has been "violated." This court may also consider new evidence if this evidence "will have a bearing on the outcome."

¶ 21        Finally, the Book of Discipline created a Ministerial Efficiency Committee. This

committee decides the "efficiency and moral conduct of such ministers as may be referred to it." Under prior versions of the Book of Discipline, the Ministerial Efficiency Committee heard allegations of sexual misconduct. However, under the Book of Discipline that was applicable during this case, the Judicial Committee, Trial Committee, and the Triers of Appeals had exclusive jurisdiction over allegations of sexual misconduct.

¶ 22                                    B. The Complaint

¶ 23        In May 2013, plaintiff filed a four-count complaint against the Fourth District AME Church, John, Tamara, and Tyson. The claims raised in the complaint were (1) defamation, (2) defamation *per se*, (3) false light, and (4) intentional infliction of emotional distress.

¶ 24        Plaintiff's complaint arose over allegations of sexual misconduct. Plaintiff's complaint stated that he was the chairperson of a committee responsible for screening candidates for admission to the ministry within the AME Church. Tamara was one of these candidates. Plaintiff's complaint stated that in April 2012, he told Tamara that she would need additional counseling before her application could proceed. Plaintiff's complaint stated that this "was the extent" of the private statements he made to Tamara.

¶ 25        The complaint further stated that in May 2012, Tamara sent an e-mail to the Reverend Elaine Walters, pastor of the AME Church in Peoria, Illinois. In this e-mail, Tamara accused plaintiff of sexual harassment. A copy of this e-mail was forwarded to Tyson, who was the presiding elder of the North District. The complaint alleged that Tyson "republished the allegations to other pastors within the AME Conference."

¶ 26        The complaint further stated that Tyson repeated the allegations to John, who was the Bishop of the Fourth District AME Church. The complaint further stated that John then "replaced" plaintiff from the committee designated to select new ministers. The complaint alleged

that the allegations of sexual misconduct and repeating the allegations of sexual misconduct brought him into "public disgrace and scandal."

¶ 27                                    C. The Answers

¶ 28          In June 2013, Tyson, John, and the Fourth District AME Church (collectively, the defendants) filed an answer. The answer denied plaintiff's allegations.

¶ 29          The answer also asserted the ecclesiastic abstention doctrine as a defense, arguing that "Illinois courts have long recognized *** the power and autonomy [of religious organizations] to govern and discipline their own clergy free from secular court interference." The answer argued that plaintiff, as a minister in the AME Church, is governed by the Book of Discipline.

¶ 30          The answer further argued that the Book of Discipline prohibited sexual harassment and established an internal adjudication system for resolving claims of sexual harassment against the clergy. The answer further stated that "information regarding the sexual misconduct allegation was provided only to those persons necessary to comply with the sexual misconduct policy" of the AME Church.

¶ 31          In August 2013, Tamara filed a *pro se* answer that "re-states and incorporates by reference" defendants' answer. We note that the trial court entered default judgment against Tamara in November 2016, and she is not a party to this appeal.

¶ 32                                    D. The Depositions

¶ 33                                    1. *Tamara's Deposition*

¶ 34          Tamara testified that in April 2012, she traveled to the AME Church in Quincy, Illinois, as a part of her journey to become a minister within the AME Church. She stated that plaintiff was the dean of the board of examiners, which was responsible for selecting candidates for admission into the ministry of the AME Church.

- 7 -

¶ 35        She said plaintiff requested to speak to her privately in the sanctuary. She testified that plaintiff called her a "beautiful woman" and that he was "turned on" by her. She further claimed that plaintiff said that "if I was younger, the things that I could do to you."

¶ 36        In May 2012, Tamara notified Reverend Elaine Walters, her pastor, of the alleged incident by e-mail. Elaine then notified Tyson, the presiding elder, of the alleged incident. Tyson then discussed the matter with Tamara and Elaine. Tyson directed Elaine to help Tamara revise her complaint because it was difficult to read and contained grammatical errors. Tamara maintained that Elaine only helped with editing the complaint. Tamara testified that she also told her counselor about the alleged sexual harassment.

¶ 37                    2. *Tyson's Deposition*

¶ 38         Tyson testified that at the time of the allegation, plaintiff was the pastor of the Wayman AME Church and was dean of the board of examiners. In that latter role, plaintiff oversaw a committee that was responsible for screening candidates for admission into the ministry of the AME Church. Tamara was one of these candidates.

¶ 39        Tyson testified that he became aware of the allegations of sexual harassment in May 2012. Tyson asked Elaine to help Tamara revise her complaint for clarity and grammar. Tyson admitted that the revised complaint did not comply with the requirements set forth in the Book of Discipline, such as being signed under penalty of perjury.

¶ 40        After receiving the complaint, Tyson alerted John of the allegation. Tyson said that all Tamara wanted was a formal apology. John said that an apology would not be sufficient and that the AME Church needed to conduct an internal investigation. John instructed Tyson to convene the Ministerial Efficiency Committee to investigate the matter.

¶ 41        Tyson then contacted Reverend Larry Lewis, who was the chair of the Ministerial

Efficiency Committee. Tyson told Larry there was an allegation of sexual misconduct and that Larry needed to convene the Ministerial Efficiency Committee. Tyson stated that he did not divulge the facts of the allegation or the names of the relevant parties to Larry. Larry told Tyson that the Ministerial Efficiency Committee no longer handles allegations of sexual misconduct and that the matter should be forwarded to the Judicial Committee. Tyson admitted that the Book of Discipline requires that the Judicial Committee, rather than the Ministerial Efficiency Committee, adjudicate allegations of sexual misconduct.

¶ 42        Tyson then contacted Reverend Vivian Clarington, who was the chair of the Judicial Committee. Tyson did not discuss the allegations with Vivian. Rather, Tyson merely forwarded a copy of the complaint to her. Tyson testified that he has no personal knowledge of what occurred at the Judicial Committee.

¶ 43        Tyson testified that the Judicial Committee first issued a finding that the allegations were unfounded. Nonetheless, Tyson stated that the Judicial Committee later reversed those findings. This time, the Judicial Committee found that sufficient evidence existed to support the allegations and the matter should be referred to the Trial Committee. Tyson stated that the ecclesiastic courts have not resolved this issue because of plaintiff's litigation.

¶ 44        Tyson further stated that plaintiff was moved from the Wayman AME Church to a church in Des Moines, Iowa. Tyson stated that plaintiff's move was not related to the allegations of sexual misconduct.

¶ 45                              3. *Plaintiff's Deposition*

¶ 46        Plaintiff admitted that he was alone with Tamara in the sanctuary of the AME Church in Quincy, Illinois. However, plaintiff denied Tamara's accusation that he made inappropriate comments to her. Plaintiff insisted that he only spoke with her privately so that he could

tell her that her application could not proceed further until she received additional psychological training.

¶ 47    Plaintiff testified that he first became aware of the allegations of sexual misconduct in May 2012. Plaintiff stated that Tyson told him that Tamara only wanted an apology. Plaintiff said he would apologize if it was not seen as an admission of guilt. Plaintiff stated that Tamara's statements were false and maintained that he acted appropriately.

¶ 48    Plaintiff testified that he sued Tamara and defendants for failing to follow the Book of Discipline. Plaintiff believed that Tamara made a false statement and failed to follow the Book of Discipline's procedural requirements for drafting and filing a complaint. Plaintiff stated that defendants failed to follow the Book of Discipline's procedural requirements for adjudicating claims of sexual misconduct.

¶ 49    Plaintiff further argued that Tyson and John repeated Tamara's allegedly false allegations to other individuals in the AME Church. According to plaintiff, Tyson divulged confidential information to Larry when Tyson requested that the Ministerial Efficiency Committee be convened. However, when pressed further, the following questions were asked and answers given:

> "Q. Other than Vivian Clarington and Reverend Larry Lewis *** do you know of anyone who claims to have heard statements by Tyson Parks or John Bryant regarding the allegations by Ms. [Tamara] Henderson accusing you of sexual misconduct?
>
> A. Personally heard?
>
> Q. Correct.
>
> A. No.

* * *

Q. Do you know of anybody specifically telling you that Reverend Parks said you were guilty of the allegations of sexual misconduct?

A. Specifically saying it, no."

¶ 50     Plaintiff testified that John removed him from his church and sent him to a church in Iowa because of the allegations of sexual misconduct. Plaintiff claimed his reputation has been damaged and that he has suffered damages as a result of the alleged defamatory statements. Plaintiff also admitted that he told his entire congregation about this matter after the Judicial Committee found that there was a factual basis to support the allegations of sexual harassment.

¶ 51     E. The Defendants' Motion for Summary Judgment

¶ 52     In November 2016, defendants filed a motion for summary judgment, arguing that the ecclesiastic abstention doctrine prohibited the trial court from adjudicating this matter.

¶ 53     In March 2017, plaintiff filed a response, arguing that the ecclesiastic abstention doctrine was not an automatic bar to adjudicating this case. Instead, plaintiff argued that this case could be decided under neutral principles of law. Likewise, plaintiff argued that summary judgment was improper because there was a dispute of material fact on whether (1) plaintiff sexually harassed Tamara, (2) whether the defendants properly followed the Book of Discipline, and (3) whether plaintiff was damaged.

¶ 54     F. The Trial Court's Ruling

¶ 55     In April 2017, the trial court granted defendants' motion for summary judgment. The court concluded that (1) the ecclesiastic abstention doctrine applied and (2) insufficient admissible evidence had been offered to establish plaintiff's causes of action.

¶ 56     This appeal followed.

¶ 57                                    II. ANALYSIS

¶ 58            Plaintiff appeals, arguing that (1) the ecclesiastic abstention doctrine does not apply, (2) the case can be decided under neutral principles of law, and (3) sufficient evidence was admitted to establish his causes of action. We conclude that the ecclesiastic abstention doctrine applies in this case. Accordingly, we affirm the trial court's grant of summary judgment.

¶ 59                    A. Summary Judgment and the Standard of Review

¶ 60            Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016). The purpose of summary judgment is not to try a question of fact, but to determine whether any genuine issue of fact exists to be tried. *Thompson v. Gordon*, 241 Ill. 2d 428, 438, 948 N.E.2d 39, 45 (2011). In determining this, the court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Williams v. Manchester*, 228 Ill. 2d 404, 417, 888 N.E.2d 1, 9 (2008). Summary judgment should be granted only if the right of the moving party is clear and free from doubt. *Colburn v. Mario Tricoci Hair Salons & Day Spas, Inc.*, 2012 IL App (2d) 110624, ¶ 32, 972 N.E.2d 266.

¶ 61            Evidence, such as hearsay, which is inadmissible at trial, is not admissible in support of or in opposition to a motion for summary judgment. *People ex rel. Madigan v. Kole*, 2012 IL App (2d) 110245, ¶ 47, 968 N.E.2d 1108. Unsupported conclusions, opinions, or speculation is insufficient to raise a genuine issue of material fact for purposes of summary judgment. *Argueta v. Krivickas*, 2011 IL App (1st) 102166, ¶ 8, 952 N.E.2d 1238. A trial court's entry of summary judgment is reviewed *de novo*. *Evans v. Brown*, 399 Ill. App. 3d 238, 244, 925 N.E.2d 1265, 1271 (2010).

¶ 62                    B. Statements Made During Ecclesiastic Proceedings

- 12 -

¶ 63 Plaintiff argues that the ecclesiastic abstention doctrine does not apply because "[a]n objective consideration of these facts *** does not require an inquiry into ecclesiastical matters[,] such as theological or doctrinal matters." We disagree.

¶ 64                    1. *The Applicable Law*

¶ 65 The first amendment to the Constitution of the United States provides, in part, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const., amend. I. The first amendment applies to state governments by incorporation through the fourteenth amendment. U.S. Const., amend. XIV.

¶ 66 The United States Supreme Court has held that freedom of religion is guaranteed not only to individuals but also to churches in their collective capacities, which must have the "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff v. Saint Nicholas Cathedral of the Russian Orthodox Church in North America*, 344 U.S. 94, 116 (1952). Religious organizations are free to establish their own rules, regulations, and tribunals for disciplining clergy and adjudicating religious disputes. *Serbian Eastern Orthodox Diocese for the United States of America & Canada v. Milivojevich*, 426 U.S. 696, 724 (1976). When religious organizations establish such tribunals, their decisions are binding upon civil courts on matters of internal discipline, faith, internal organization, ecclesiastical rule, custom, or law. *Stepek v. Doe*, 392 Ill. App. 3d 739, 746, 910 N.E.2d 655, 662 (2009) (citing *Milivojevich*, 426 U.S. at 713).

¶ 67                    2. *The First District's Analysis*

¶ 68 In *Stepek*, two brothers accused the plaintiff, a Catholic priest, of sexual molestation. *Stepek*, 392 Ill. App. 3d at 743. The Catholic Church had an intricate and detailed policy for addressing, investigating, and adjudicating claims of child molestation. See *id.* at 741-43. As

- 13 -

the internal investigation was pending, the plaintiff sued the brothers and the Catholic Church for defamation and intentional infliction of emotional distress. *Id.* at 740.

¶ 69        The Catholic Church filed a motion to dismiss, arguing that plaintiff's claims were barred under the first amendment. *Id.* The trial court denied the motion, but the question of whether the trial court had subject-matter jurisdiction was certified for appeal. *Id.* at 740-41. The First District concluded that the plaintiff's claims were barred by the first amendment, reasoning as follows:

> "[P]laintiff, as an ordained priest, and the Does, as parishioners, acceded to the Policies of the Archdiocese of Chicago and are bound by them. [Citation.] Plaintiff's defamation claim concerns the core of the church-minister relationship. While the Catholic Church's interest is not exclusive, the Church does have a strong interest in protecting minors from sexual abuse at the hands of clergy. For purposes of the first amendment, parishioner victims, such as the Does, who invoke the Catholic Church's internal disciplinary process may also invoke their belief in the Church's right to be free from State court interference in that process. As the *Hiles* court noted, 'The First Amendment's protection of internal religious disciplinary proceedings would be meaningless if a parishioner's accusation that was used to initiate those proceedings could be tested in civil court.' [*Hiles v. Episcopal Diocese of Massachusetts*, 773 N.E.2d 929, 937 (Mass. 2002).] Indeed, 'a person must be free to say anything and everything to his Church, at least so long as it is said in a recognized and required proceeding of the religion and to a recognized official of the religion.' [*Cimijotti v. Paulsen*, 230 F. Supp. 39, 41 (N.D. Iowa 1964).] *Since the only defamatory publication allegedly made by the*

- 14 -

*Does was made to the Church itself within internal disciplinary proceedings, the absolute first amendment protection for statements made by Church members in an internal church disciplinary proceeding precludes the circuit court from exercising jurisdiction in this matter.*" (Emphasis added.) *Stepek*, 392 Ill. App. 3d at 752-53.

¶ 70                                    3. *This Case*

¶ 71         The facts of our case are striking similar to those in *Stepek*. Here, plaintiff was a minister in the AME Church. Tamara was a member of the AME Church and was seeking to become a minister. Both of these individuals were bound by the Book of Discipline.

¶ 72         The Book of Discipline prohibited sexual harassment by the clergy, reasoning that sexual harassment "by representatives of the Church is a betrayal of a sacred trust, and a sinful abuse of power for which consequences are necessary and appropriate." To effectuate this goal, the Book of Discipline established methods of reporting sexual harassment, created tribunals to investigate and adjudicate claims of sexual harassment, provided a range of punishments for the guilty, and established an appellate system to secure the rights of the accused.

¶ 73         After the incident alleged in this case, Tamara filed a complaint with her minister. Tamara's minister then forwarded this complaint to Tyson, who was the presiding elder of the North District. Tyson then communicated this information to John, who was the bishop of the Fourth District AME Church. John then directed Tyson, incorrectly, to convene the Ministerial Efficiency Committee to investigate this matter.

¶ 74         Tyson then contacted Larry, who was the chair of the Ministerial Efficiency Committee. Larry told Tyson that the Judicial Committee, rather than his committee, now handles allegations of sexual misconduct. Tyson then contacted Vivian, who was chair of the Judi-

cial Committee. Tyson instructed Vivian to convene the Judicial Committee to investigate this matter.

¶ 75       All of these communications occurred within the internal disciplinary proceedings of the AME Church. The first amendment's protection of internal religious disciplinary proceedings would be meaningless if republishing allegations of sexual abuse within those proceedings could be tested in civil court. *Id.* at 752.

¶ 76       Moreover, plaintiff's claim that Tyson incorrectly alerted the chair of the Ministerial Efficiency Committee and allegedly reported the underlying facts of the investigation to him makes no difference. Even if true, the chair of the Ministerial Efficiency Committee is still a part of the AME Church's internal disciplinary process. Accordingly, these statements were constitutionally protected as well. See *id.* at 753.

¶ 77       We note that in plaintiff's deposition, he admitted he was suing the defendants for "failing to follow the guidelines [in the Book of Discipline]." Similarly, in his appellate brief, plaintiff goes into exhaustive detail about how the defendants failed to follow the Book of Discipline. However, this is not relevant to our analysis because this occurred *within* the internal disciplinary procedures of the church. Compare *Stepek*, 392 Ill. App. 3d at 753 (ecclesiastic abstention doctrine applied when statements were made within a church's internal disciplinary process), with *Duncan v. Peterson*, 359 Ill. App. 3d 1034, 1045-46, 835 N.E.2d 411, 421-22 (2005) (evaluating a defamation claim under neutral principles of law when a pastor alleged that his former church sent false and misleading letters throughout the local community).

¶ 78       Plaintiff failed to present evidence that defendants published Tamara's statements to anyone outside of the internal disciplinary procedures of the AME Church. The statements made pursuant to the internal disciplinary procedures come within the ecclesiastic abstention

doctrine and, accordingly, are protected by the first amendment. *Stepek*, 392 Ill. App. 3d at 753.

¶ 79　　　　Plaintiff's claims in this case are based on inadmissible hearsay, rumor, and speculation; they are not supported by any admissible evidence. *Kole*, 2012 IL App (2d) 110245, ¶ 47; *Krivickas*, 2011 IL App (1st) 102166, ¶ 8. For instance, plaintiff admitted that, except for the internal investigation, he has not personally heard anyone claim that Tyson or John spoke of the allegations of sexual misconduct.

¶ 80　　　　In passing, we note that plaintiff argues in his reply brief that a publication occurred outside of the church disciplinary proceedings because Tamara discussed the alleged sexual harassment with her counselor. We also note that plaintiff does not allege that the defendants republished what Tamara told her counselor. However, we need not decide this issue because plaintiff raised this argument for the first time in his reply brief. Accordingly, this issue is waived. *People v. Polk*, 2014 IL App (1st) 122017, ¶ 49, 12 N.E.3d 569; Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013).

¶ 81　　　　　　　　　　　　　C. Neutral Principles of Law

¶ 82　　　　Plaintiff argues we can evaluate his claims under neutral principles of law. Essentially, notwithstanding any underlying ecclesiastic matter, plaintiff contends that we can determine (1) whether the AME Church followed its own disciplinary proceedings and (2) whether the alleged statements were defamatory under neutral principles of law. We disagree.

¶ 83　　　　Illinois courts will not resolve cases that require interpretation of religious doctrine. *Stepek*, 392 Ill. App. 3d at 754. Nonetheless, when doctrinal issues are not involved, the court may evaluate the dispute under neutral principles of law. *Id.* at 754-55; *Jones v. Wolf*, 443 U.S. 595, 603 (1979). Under the neutral principles of law approach, a court objectively examines pertinent church characteristics, constitutions, bylaws, deeds, state statutes, and other evidence to

resolve the matter as it would a secular dispute. *Diocese of Quincy v. Episcopal Church*, 2014 IL App (4th) 130901, ¶ 44, 14 N.E.3d 1245. Traditionally, the neutral principles of law approach is applied to allocate disputed church property under objective, well-established concepts of trust and property law. *Id.*; *Jones*, 443 U.S. at 603.

¶ 84 In *Stepek*, the First District refused to apply the neutral principles of law approach to determine the veracity of plaintiff's defamation claim. *Stepek*, 392 Ill. App. 3d at 755. The court explained, as follows:

> "While it is possible that resolution of plaintiff's claims would not require any interpretation of the Catholic Church's doctrine, resolving this dispute would involve the secular court interfering with the Church's internal disciplinary proceedings where plaintiff's claims are based on the Does' statements, which were provided solely within the Church's proceedings. Irrespective of the fact that a court or jury could apply 'neutral principles of law' to the Does' alleged statements to determine whether they were defamatory, those statements were published exclusively within the context of the Church's disciplinary proceedings. Therefore, as previously discussed, this court is bound to step aside and permit the Church to consider the veracity of the Does' charges of sexual abuse through the Church's process." *Id.*

¶ 85 We agree with the First District and conclude that resolving this dispute under neutral principles of law would interfere with the AME Church's internal disciplinary proceedings. *Id.* at 753. Accordingly, we are bound to step aside and permit the church to consider the authenticity of Tamara's claims of sexual harassment.

¶ 86 D. Failure to Allege Sufficient Admissible Evidence

- 18 -

¶ 87 Because we conclude that the trial court correctly granted summary judgment under the ecclesiastic abstention doctrine, we need not resolve whether the trial court correctly determined that plaintiff failed to allege sufficient admissible evidence to support his claims, which was an alternative ground cited by the trial court for granting defendants' motion for summary judgment. Nonetheless, we will observe that the trial court's assessment on this point appears to be soundly based.

¶ 88 III. CONCLUSION

¶ 89 For the preceding reasons, we affirm the trial court's order.

¶ 90 Affirmed.